**Gregory CHANDLER, Plaintiff,**

v.

**UNITED STATES, Defendant.**

No. 98–423C.

United States Court of Federal Claims.

June 22, 2000.

---

Gregory Chandler, San.Francisco, CA, pro se.

Robert Steinbuch, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., with whom were James M. Kinsella, Assistant Director, and David M. Cohen, Director, attorneys of record for the defendant. Lieutenant Colonel Terry L. Elling, and Captain Joanne P. Tetreault, Litigation Division, United States Army, Arlington, VA, of counsel.

**OPINION**

HORN, Judge.

### FINDINGS OF FACT

The plaintiff, Gregory Chandler, filed a complaint in the United States District Court for the Northern District of California on July 7, 1997. After the California District Court ordered the case transferred to this court for lack of jurisdiction, plaintiff filed his complaint in this court.[1] Plaintiff alleges breach of contract, negligence, and due process violations, all stemming from his assertion that he has never been released from active military duty, and that he is an active duty major in the Army,[2] who is entitled to promotion to the rank of lieutenant colonel and a correction of his military records to reflect credit for twenty-two years of military service for retirement purposes. At the same time, the plaintiff admits and states in his complaint that "[o]n September 30, 1991, Major Chandler ceased performing United States Army duties. Major Chandler however, was not discharged from the United States Army and remained on active duty and subject to being compelled to perform military duties." He also claims that he is entitled to back pay of at least $500,000.00 and other monetary compensation.

Plaintiff contends that he is still a commissioned officer in the United States Army, and that his military status has been acknowledged by the Army on multiple occasions. Plaintiff relies on three groups of Army records to support his assertions, including: (1) three military pay computation reports, prepared in 1988, 1989, and 1991, which state that plaintiff was on active duty at the time the report was computed; (2) a form letter from Lieutenant General Allen K. Ono, dated

---

1. Although plaintiff, Gregory Chandler, filed the complaint in this court *pro se*, he filed a declaration, under penalty of perjury, with this court in which he stated, "I am an attorney licensed to practice in the State of California."

2. Plaintiff not only alleges he is still an Army officer, but in his complaint he refers to himself as "Major Chandler." As part of the prayer for relief in his complaint he requests promotion to the grade of lieutenant colonel. At oral argument on the defendant's motion to dismiss, plaintiff stated he received promotion orders in 1992,

but he could not produce them, nor are they in the record before the court. Plaintiff has no documentation to show that he was ever promoted, or otherwise entitled to claim the rank of major, and the records demonstrate that the defendant stopped disbursing pay to the plaintiff in March, 1990. The earnings statement for the period March 1–31, 1990, lists the end of month payment due as "none," whereas previous earnings statements in the record had listed a dollar amount.

June 12, 1990, which requests that plaintiff, a "Fellow Soldier," complete a survey; and (3) two memoranda, one from the Department of the Army, dated June 6, 1992, which states, "This person is an officer on active duty" and another issued by the Army Board for the Correction of Military Records (ABCMR), dated November 9, 1994, which states, "The applicant is an officer in the United States Army."

According to the plaintiff, Gregory Chandler, he first entered the United States Army on January 10, 1975. Beginning on June 6, 1975, he served on active duty as a legal clerk. He was honorably discharged from active duty June 5, 1978, and assigned to inactive status in the United States Army Reserve.

The Army records produced for the court are in conflict as to when the plaintiff was released from his obligation in the Reserves.[3] In plaintiff's application for appointment, signed on March 6, 1987, he lists his reserve duty time as June 1978 to December 1978, while a service computation form in the record reflects inactive duty status through July, 1988.

Plaintiff states that he graduated from the University of Texas Law School in May, 1988. The record contains multiple applications to join the United States Army Judge Advocate General's Corps (JAGC) to become a commissioned officer, including applications in March, 1987, and February, 1988. On May 31, 1988, Mr. Chandler accepted a reserve commission as a first lieutenant in the JAGC. In June, 1988, he was ordered to active duty, and reported on July 10, 1988, for a projected three-year term of service.

To be eligible for a commission as a JAG officer, Army Regulations require "a certificate or statement from the clerk of the highest court of a State or a Federal court. It should show the admission to practice and current standing before the bar." Army Regulation 135–100 § IV ¶ 3–13(a)(2) (Feb. 1, 1984).

To satisfy the bar admission requirement for commissioning as a JAG officer, plaintiff submitted a letter, dated May 27, 1988, with his application, which was produced from the Army JAG Corps files, and which purported to be from James Chute, Clerk, Supreme Judicial Court of the State of Maine, stating: "I hereby certify that GREGORY CHANDLER is admitted to practice before the Maine Supreme Judicial Court of the State of Maine." At the oral argument in this case, plaintiff denied having submitted this letter with his application, or that the signature on the letter is his. However, in the final Criminal Investigation Division (CID) Report of Investigation for the Department of the Army, dated April 12, 1990, the synopsis section states: "[i]nvestigation revealed that CHANDLER forged CHUTE's name to a letter certifying that he (CHANDLER) was certified to practice law before the Maine Supreme Judicial Court of the State of Maine. CHANDLER then presented this document to the U.S. Army to obtain the position as a lawyer."

Plaintiff also tries to argue that, for the purpose of meeting the bar requirement for JAG officers, he was admitted to the bar in Maine, *pro hac vice*,[4] in September, 1987. Mr. Chandler stated that several of his friends who were going into federal service "started looking around and we did some calling. And we were told by the— some people in the Maine state bar ... I believe the term is pro hoc vitae [sic].... And we were told that if we just submitted our law school transcripts, apply for admission to the bar, we would receive admission to such bar." Plaintiff argued that Debra Mazzolli [sic]

---

**3.** The Army was unable to produce all of Mr. Chandler's military records, which has made review and resolution of plaintiff's case more challenging. Some records appear to have been lost, others destroyed, others are unaccounted for completely, and many of the records that are in existence appear contradictory. Moreover, the administrative record produced for use in this case was difficult and time consuming to review due to its disorganization. The record contains numerous duplicate documents and is not organized in chronological or other readily identifiable order.

**4.** "For this occasion or particular purpose. The phrase usu[ally] refers to a lawyer who has not been admitted to practice in a particular jurisdiction but who is admitted there temporarily for the purpose of conducting a particular case." BLACK'S LAW DICTIONARY 1227 (7th ed.1999).

from the Clerk's Office in Maine sent him a "certification style document" stating: "Gregory Chandler is a member of the Supreme Judicial Court of Maine." Plaintiff does not have in his possession a copy of that document, or any other documents attesting to the fact that he was admitted to the bar to practice law in Maine in any capacity.

In a letter to Army officials dated November 27, 1989, James C. Chute, after having reviewed the May 27, 1988 letter indicated that "the signature on this document is not mine." Mr. Chute's letter further stated "Debra L. Mazeroll, Bar Admission Administrator, informs me that Gregory Chandler sat for the February 1988 bar exam, applied for but did not take the July 1988 bar exam, and sat for the July 1989 bar exam. He did not receive a passing grade on either of his two attempts and has not been admitted to the practice of law in the State of Maine."

In October, 1989, due to a poor performance evaluation, the Staff Judge Advocate at Fort Dix requested a verification of Chandler's credentials through JAG channels. An Army Criminal Investigation Division (CID) inquiry followed, including handwriting analyses, comparisons of the typewriter ink on plaintiff's application to the JAGC with the purported letter from the Clerk's Office in Maine, and analysis of paper and ink samples from the Clerk's Office. On December 13, 1989, a forgery charge was preferred against Mr. Chandler at Fort Dix. The CID report, issued in January, 1990, stated that "[t]here are strong indications CHANDLER wrote the original of the questioned facsimile signature" appearing on the letter purported to be from Mr. Chute. The Army conducted an investigation pursuant to Article 32 of the Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 832 (1994 & Supp. III 1997), to determine the disposition of the forgery charge. After completing the Article 32 investigation, Army authorities declined to refer the charges to a court-martial. Instead, the Army deferred to The Judge Advocate General's determination to void Mr. Chandler's status as a commissioned officer in the JAGC.[5] In a letter, dated March 7, 1990, the plaintiff was advised that:

It has been determined that the appointment to commissioned officer status in the United States Army Reserve tendered you by appointment letter from Department of the Army, U.S. Total Army Personnel Agency (Provisional) dated 25 April, 1988 was procured through fraud by submitting false documents purporting to show that you were a member of a state bar, when you were, in fact, not a member of the bar of the state of Maine. The lack of bar membership is a non-waivable commissioning requirement. Therefore, your purported appointment, and the above referenced appointment letter are void. As you were never validly appointed, there is no requirement to revoke the commission. Accordingly, you hold no military status.

Because your purported United States Army Reserve appointment is void as contrary to law, or to regulations which implement law, you did not attain any *de jure* military status and therefore, you were ineligible for appointment to First Lieutenant or to Captain as a result of consideration for promotion. Whether your purported service may be characterized as *de facto* must be determined by fiscal officers of the government who have been provided this information.[6]

In a declaration dated January 20, 1994, Mr. Chandler acknowledged having received notice that, in March, 1990, he would no longer be performing military duties because of questions regarding the status of his admis-

---

5. Army Regulations provide: "Upon receipt of the investigation and the Committee's report, TJAG [The Judge Advocate General] will take appropriate action. TJAG is not bound by the findings or recommendations in the investigation or the opinions of the Committee. Based on all available information, TJAG, will determine if instructions, administrative admonition, censure, temporary or permanent suspension (MCM, R.C.M. 109) as counsel before courts-martial or the ACMR, decertification (UCMJ, Art. 26 or 27(b)), or other appropriate action is warranted. TJAG will cause the interested attorney to be informed of any proposed action." Army Regulation 27–1 § II, ¶ 5–8(a) (Aug. 1, 1984).

6. The letter purporting to be from Mr. Chute, the Army CID report, and the March 7, 1990, letter are available in the Administrative Record. The Article 32, UCMJ investigation report is not included, nor are any other separation documents.

sion to practice law in the State of Maine. The government asserts that the plaintiff was released from active duty in March, 1990, because his appointment was considered void.

In March, 1990, the Army stopped paying Mr. Chandler. Plaintiff's Army leave and earnings statements, starting from his arrival at Fort Dix, reflect both mid- and end-of-month payments from October 1989 through mid-March 1990. For the period beginning in October, 1989, the leave and earnings statements show the Army paid plaintiff by depositing his pay directly into his account at the First National Bank South in Burlington, New Jersey.[7] However, beginning in mid-March, 1990, the Army stopped depositing money into plaintiff's account, and instead accrued and carried forward, but did not disburse, his pay, until even this was stopped in February, 1991. Plaintiff acknowledges that he has not received any military pay from the Army after the mid-March 1990 payment.

On January 20, 1994, plaintiff applied to the ABCMR for "a release from active duty," and to become a member of the Army Reserve. His petition was denied on November 12, 1996. He filed an amended application at the request of the Board in December, 1994. The Board, however, denied plaintiff's request on November 7, 1996, by way of a letter addressed to Mr. Chandler:

> This is in response to your letter of 8 October 1996 to the Secretary of the Army, the Honorable Togo West, concerning your military service and status.
>
> The enclosed copy of a letter addressed to you from the U.S. Total Army Personnel Command, dated 7 March 1990, is self-explanatory and should answer any questions you may have.
>
> Since it appears you do not have, and never attained de jure military status, this Board contemplates no further action on your application for correction of military records.

The Board attached the referenced March 7, 1990, letter to its denial of plaintiff's petition.

On July 7, 1997, Mr. Chandler filed suit in the United States District Court for the Northern District of California, alleging violations of procedural due process, negligence, and breach of contract. The District Court found that it lacked jurisdiction and ordered the case transferred to the United States Court of Federal Claims. The plaintiff subsequently filed a complaint in this court. The defendant has filed a motion to dismiss, contending that the complaint was filed beyond the six-year statute of limitations applicable in this court. 28 U.S.C. § 2501 (1994). Recently, plaintiff Chandler requested a settlement conference, which was opposed by the defendant. As stated by the government, "the positions of the parties are diverse and the government sees no possibility of settlement." For the reasons discussed below, defendant's motion to dismiss is granted.

## DISCUSSION

The plaintiff alleges violations of procedural due process for failure to correct errors in his military record, negligence,[8] and breach of contract.[9] Plaintiff's initial allega-

---

7. During the oral argument on defendant's motion to dismiss held on June 18, 1999, Mr. Chandler affirmed this bank account as his.

8. Defendant has not addressed the negligence cause of action; however, pursuant to the plain language of the Tucker Act, 28 U.S.C. § 1491, all claims "sounding in tort" are not cognizable in this court. *See Keene Corporation v. United States*, 508 U.S. 200, 214, 113 S.Ct. 2035, 124 L.Ed.2d 118 (1993); *Brown v. United States*, 105 F.3d 621, 623 (Fed.Cir.1997), *reh'g denied* (April 17, 1997); *Doe v. United States*, 100 F.3d 1576, 1585 (Fed.Cir.1996), *reh'g denied* (1997).

9. Plaintiff's commission in the Army cannot be characterized as a contract for the purpose of

establishing jurisdiction in this court. "Absent specific legislation, federal employees derive the benefits and emoluments of their positions from appointment rather than from any contractual or quasi-contractual relationship with the government." *Hamlet v. United States*, 63 F.3d 1097, 1101 (Fed.Cir.1995), *reh'g denied*, (1995), *cert. denied*, 517 U.S. 1155, 116 S.Ct. 1542, 134 L.Ed.2d 646 (1996). This rule also applies to a military commission, as "[n]either our predecessor, the Court of Claims, nor the Claims Court has found that the military enlistment agreement gives rise to a contractual relationship." *Chu v. United States*, 773 F.2d 1226, 1229 (Fed.Cir. 1985).

tion of subject matter jurisdiction in his complaint was that "[t]here is federal question jurisdiction under ... Section 1331." However, 28 U.S.C. § 1331 (1994) establishes federal question jurisdiction in the district courts, not in the United States Court of Federal Claims. *See Faulkner v. United States,* 43 Fed.Cl. 54, 55 (1999). Subsequently, plaintiff asserted jurisdiction pursuant to 28 U.S.C. § 1491(a)(2) and 10 U.S.C. § 1552 (1994). The Tucker Act, 28 U.S.C. § 1491(a)(2), cited by the plaintiff, defines jurisdiction in the Court of Federal Claims, but "does not create any substantive right enforceable against the United States for money damages." *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607, *reh'g denied,* 446 U.S. 992, 100 S.Ct. 2979, 64 L.Ed.2d 849 (1980) (quoting *United States v. Testan,* 424 U.S. 392, 398, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976)); *see also Saraco v. United States,* 61 F.3d 863, 865 (Fed.Cir. 1995) (citing *Zumerling v. Devine,* 769 F.2d 745, 749 (Fed.Cir.1985)), *cert. denied,* 517 U.S. 1166, 116 S.Ct. 1565, 134 L.Ed.2d 665 (1996). "[Plaintiff] must first establish that, under the Tucker Act, he has a money-mandating statute that entitles him to a pay remedy." *Palmer v. United States,* 168 F.3d 1310, 1314 (Fed.Cir.1999).

The next statute on which plaintiff subsequently relied, 10 U.S.C. § 1552, states:

(a)(1) The Secretary of a military department may correct any military record of the Secretary's department when the Secretary considers it necessary to correct an error or remove an injustice. Except as provided in paragraph (2), such corrections shall be made by the Secretary acting through boards of civilians of the executive part of that military department....

* * *

(c) The Secretary concerned may pay, from applicable current appropriations, a claim for the loss of pay, allowances, compensation, emoluments, or other pecuniary benefits, or for the repayment of a fine or forfeiture, if, as a result of correcting a record under this section, the amount is found to be due the claimant on account of his or another's service in the Army....

10 U.S.C. § 1552.

As quoted above, section 1552 provides that the Secretary of the Army "may pay" a military pay claim if an amount is found to be due. The United States Court of Appeals for the Federal Circuit has stated that, "[b]y its terms, section 1552(c) does not mandate pay at all. Rather, it provides for appropriate discretionary payment by the Secretary in certain circumstances." *Dehne v. United States,* 970 F.2d 890, 894 (Fed.Cir.1992) (citations omitted); *Longval v. United States,* 41 Fed.Cl. 291, 302 (1998); *Pride v. United States,* 40 Fed.Cl. 730, 734 (1998); *Hernandez v. United States,* 38 Fed.Cl. 532, 537 (1997); *Ewing v. United States,* 36 Fed.Cl. 159, 163 (1996). *Dehne,* however, does not cite an earlier United States Court of Claims case, *Blum v. United States,* which held that "10 U.S.C. § 1552 is a statute expressly mandating compensation...." *Blum v. United States,* 227 Ct.Cl. 555, 559 n. 3, 1981 WL 21399 (1981). The court in *French v. United States,* 42 Fed.Cl. 49, 53 (1998), *aff'd,* 194 F.3d 1338, 1999 WL 401242 (Fed.Cir.1999) (table), discussed the need for the Federal Circuit to reconcile *Dehne* and *Blum.* In *Sanford v. United States,* the court acknowledged the *Dehne* case, but found section 1552 to be pay-mandating in circumstances in which a claimant can qualify for compensation after a change of records. Discussing the discrepancy, the *Sanford* court wrote:

Since *Blum,* a three-judge panel of the federal circuit ruled that section 1552 is not a money mandating statute. *See Dehne,* 970 F.2d at 894; *accord Barth v. United States,* 28 Fed.Cl. 512, 515 (1993). Although this court finds the rationale of the *Dehne* court compelling, absent an *en banc* decision by the federal circuit, this court is constrained to hold that section 1552 confers subject matter in the instant case. *See Maniere v. United States,* 31 Fed.Cl. 410, 415 (1994) (citing *Messerschmidt v. United States,* 29 Fed.Cl. 1, 61, *aff'd,* 14 F.3d 613, 1993 WL 481139 (Fed. Cir.1993), *cert. denied,* 511 U.S. 1010, 114 S.Ct. 1382, 128 L.Ed.2d 57 (1994)).

*Sanford v. United States,* 32 Fed.Cl. 363, 367 (1994). *See also French v. United States,* 42 Fed.Cl. at 53. Definitive guidance regarding whether or not section 1552 is a pay-mandating statute in spite of its discretionary language awaits further clarification by the Court of Appeals for the Federal Circuit.

Another statute, 37 U.S.C. § 204 (1994 & Supp. III 1997) (titled "Pay and Allowances of the Uniformed Services"), can be cited as a pay-mandating statute under appropriate circumstances. The statute states that "(a) The following persons are entitled to the basic pay of the pay grade to which assigned or distributed, in accordance with their years of service computed under section 205 of this title—(1) a member of a uniformed service who is on active duty; . . . ." 37 U.S.C. § 204. "It is well established that 37 U.S.C. § 204 . . . serves as the money-mandating statute applicable to military personnel claiming damages and ancillary relief for wrongful discharge. 37 U.S.C. § 204 'confers on an officer the right to the pay of the rank he was appointed to up until he is properly separated from the service.'" *Holley v. UnitedStates,* 124 F.3d 1462, 1465 (Fed.Cir. 1997) (quoting *Sanders v. United States,* 219 Ct.Cl. at 296–97, 594 F.2d 804), *reh'g denied,* (1997). If the ABCMR had corrected plaintiff's records and found that his commission was improperly voided in March, 1990, plaintiff could then have been restored to active duty service for the remainder of his service commitment, and might have been entitled to pay for that period of time under 37 U.S.C. § 204. Though the record indicates that the defendant considers the plaintiff's commission to be void, the plaintiff asserts that he has never properly been released from active duty. This assertion, combined with the military pay statute, 37 U.S.C. § 204, is sufficient to provide this court with jurisdiction over the subject matter of the complaint.

The defendant contends, however, that the plaintiff did not file his claim within the applicable statute of limitations period included in 28 U.S.C. § 2501. The government also argues that equitable estoppel [10] and the doctrine of laches bar Mr. Chandler's claim.

Defendant argues that Mr. Chandler's delay was unreasonable and prejudicial, and that Mr. Chandler "does not offer any basis for eight years of delay in filing suit. As a consequence of this delay, the Government is faced with the loss of records and witness memories." For example, Army Regulations provide that TJAG opinions are to be destroyed on obsolescence, CID reports after six years, DD Forms 214 at the conclusion of discharging the individual, and officer separation proceedings after two years. *See* "The Modern Army Recordkeeping System," Army Regulation 25–400–2, Tables B–11, FN 27–1(a); B–44, FN 195–2(e); B–89 FN 635–5(a), 635–100(b) (Feb. 26, 1993). However, because defendant's statute of limitations argument is dispositive, these additional arguments will not be addressed.

Plaintiff argues that the statute of limitations is not applicable to his cause of action, and that the statute never began to run because he is not contesting the nature of a discharge from the United States Army. He states: "[c]ontrary to defendant's assertions, there is no date when the statute of limitations started to run. This fact is because Chandler has never been discharged or separated from the Army." As part of this argument, however, plaintiff does not refer to the fact that his commission was found by the Army to be void, and that his status with the Army was articulated in the March 7, 1990 letter to plaintiff: "you hold no military status."

■ Plaintiff's case is governed by the six-year statute of limitations contained in 28 U.S.C. § 2501. Section 2501 states that, "[e]very claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." "The statute of limitations is an express limitation on the Tucker Act's waiver of sovereign immunity." *Hart v. United States,* 910 F.2d 815, 817 (Fed.Cir.1990), and, consequently, may not be waived by either the Court of Federal Claims or the parties. *See Soriano v. United States,* 352 U.S. 270, 273, 77 S.Ct. 269, 1 L.Ed.2d 306 (1957); *Ald-*

---

**10.** Defendant states: "[t]he United States Army detrimentally relied upon Mr. Chandler's false

representation that he was an attorney licensed to practice law in the state of Maine."

*er Terrace, Inc. v. United States,* 161 F.3d 1372, 1376–77 (Fed.Cir.1998).

■ If a claim is transferred to the United States Court of Federal Claims for lack of jurisdiction from a United States District Court, as was the case here, the applicable filing date is the date when the claim was originally filed in the transferring court. 28 U.S.C. § 1631 (1994).[11] Thus, for the purpose of calculating the application of the statute of limitations, plaintiff's complaint is considered to have been filed on July 7, 1997, the date it was filed in the United States District Court for the Northern District of California.

■ As to the determination of when the claim first accrued, thus triggering the running of the statute of limitations period, the general rule is: "A claim against the United States first accrues on the date when all the events have occurred which fix the liability of the Government and entitle the claimant to institute an action." *Oceanic Steamship Co. v. United States,* 165 Ct.Cl. 217, 225, 1964 WL 8621 (1964); *see Hopland Band of Pomo Indians v. United States,* 855 F.2d 1573, 1577 (Fed.Cir.1988); *Kinsey v. United States,* 852 F.2d 556, 557 (Fed.Cir.1988).

■ In an action for correction of military records under section 1552, the events necessary to fix the government's liability are those events giving rise to the cause of action. A claim challenging an involuntary discharge from the military accrues on the date the service member is discharged. *Hurick v. Lehman,* 782 F.2d 984, 986 (Fed.Cir.1986) (citing *Wilson v. United States,* 231 Ct.Cl. 958, 959, 1982 WL 25819 (1982)). When an administrative remedy is permissive (i.e., suit may be brought without exhausting the remedy), the court usually has held that the statute of limitations is not deferred or tolled by such optional administrative consideration. Because resort to a corrections board

is a permissive remedy, a board decision is not an event necessary to bring a cause of action against the United States. *Cunningham v. United States,* 212 Ct.Cl. 451, 470, 549 F.2d 753 (1977). Once a plaintiff is on notice of a possible cause of action, the start of the limitations period is triggered, and it is not tolled while a plaintiff pursues optional administrative remedies, such as a petition to a board for correction of military records. *Hurick v. Lehman,* 782 F.2d at 987; *Colon v. United States,* 35 Fed.Cl. 515, 518 (1996); *Friedman v. United States,* 159 Ct.Cl. 1, 11–12, 310 F.2d 381 (1962), *cert. denied sub nomine Lipp v. United States,* 373 U.S. 932, 83 S.Ct. 1540, 10 L.Ed.2d 691 (1963); *see also O'Callahan v. United States,* 196 Ct.Cl. 556, 562, 451 F.2d 1390 (1971).

*Steuer v. United States,* 207 Ct.Cl. 282, 1975 WL 22825 (1975), illustrates the application of the rule in a situation analogous to the one at bar. In *Steuer,* the plaintiff brought an action for back pay alleging that the United States Army Medical Corps Reserve improperly removed him from his commission as a first lieutenant. *Id.* at 289. The Judge Advocate General (TJAG) of the Army had issued an opinion in 1966 stating that Mr. Steuer's commission was "void from its inception" because he had falsely represented that he had a degree in medicine from the University of Zurich. *Id.* at 288. Following the opinion, the Army released plaintiff from active duty, but did not issue Steuer a discharge certificate. *Id.* at 288. The United States Court of Claims determined that Mr. Steuer's cause of action accrued on the date he was dismissed from the Army. *Id.* at 294.

■ Defendant has submitted several documents to establish that March, 1990, was the time when plaintiff knew or should have known that his active duty status had terminated, or in plaintiff's case was declared void, and that, as a result, plaintiff would no longer be receiving military pay. The first docu-

11. 28 U.S.C. § 1631 states:
    Whenever a civil action is filed in a court as defined in § 610 of this title or an appeal, including a petition for review of administrative action, is noticed for or filed with such a court and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.

ment is the March 7, 1990 letter, quoted verbatim above, which stated that plaintiff held no military status and that his commission was void because it had been procured by fraud. In a declaration dated January 20, 1994, plaintiff acknowledges receipt of this information, stating: "[i]n March 1990, I was informed by the Department of the Army that I would no longer perform daily military duties.... [B]ecause there was a question about my status with the State Bar of Maine."

Second, leave and earnings statements addressed to Mr. Chandler show that in March, 1990, the Army stopped depositing money into his bank account. Instead, the pay accrued and was carried forward, but not disbursed to plaintiff. The last leave and earnings statement in the record, from February, 1991, states "MEMBER REMOVED FOR SEPARATION." Notice of a cause of action can be implied through a cessation of military pay. "If the plaintiff had any right to bring suit for his salary, it accrued when the defendant first failed to make payment of his monthly salary and his action is barred by the statute of limitations." *Middleman v. United States,* 91 Ct.Cl. 306, 308, 1940 WL 4143 (1940). Thus, in addition to the acknowledged receipt of information informing plaintiff that he would no longer be performing military duties, and that his commission was void, plaintiff also would have known that he had a cause of action against the government for back pay from the time his military pay was no longer being deposited in his bank account.

The record also contains two uncontroverted affidavits from JAG officers who were stationed at Fort Dix in March, 1990. Both affirm that in March, 1990, plaintiff knew that the Army considered him released from active duty. Colonel Daniel B. Limbaugh, Staff Judge Advocate at Fort Dix, stated in a declaration dated July 18, 1998:

I have read the plaintiff's complaint. When the plaintiff arrived at the Office of the Staff Judge Advocate, Fort Dix, New Jersey, from Korea in October 1989, he was assigned to Legal Assistance. As the Staff Judge Advocate, I had overall super-

visory responsibility for the attorneys and other personnel assigned to the office.

Based on the plaintiff's poor performance of duty, I requested that the Personnel, Plans, & Training Office, Office of The Judge Advocate General, verify the plaintiff's legal credentials. In support of his application for a JAGC commission, the plaintiff had submitted a letter which purported to certify that he was a member of the bar of the state of Maine. The investigation revealed that the signature on the letter was not legitimate and that the plaintiff was not a member of the bar of any state at that time. Accordingly, The Judge Advocate General determined that the plaintiff's commission as an Army officer was void.

I advised the plaintiff, in writing, of his status in January or February 1990 and that he would be released from active duty. He left Fort Dix and active duty service as an Army captain in or about February 1990. I remember that he was still a member of my office in Christmas 1989, but that he left during one of the early months of 1990.

The declaration of Major Joseph J. Switzer, then Chief of Administrative and Civil Law at Fort Dix, also states that plaintiff was released from active duty as a commissioned officer and left Fort Dix before the summer of 1990.

Mr. Chandler submitted three computation reports, two memoranda, and one form letter relevant to his attempt to negate the defendant's assertion that the plaintiff's cause of action was ripe in March of 1990, that the Army considered plaintiff's commission as void and that plaintiff had been released from active duty. The computation reports, although some appear to contain incorrect data entries, are insufficient to overcome the vast majority of the evidence indicating that the plaintiff's relationship with the Army ended in March of 1990. Plaintiff also acknowledged at oral argument that the mailings received from the Army after 1990, including the memoranda and letter he submitted as evidence of alleged active duty status, could have been generic mass or form mailings.

The overwhelming evidence in the record before the court demonstrates that the plaintiff's cause of action accrued in March, 1990, when he was informed that the Army considered him released from active duty, and when he no longer was receiving military pay from the Army. Plaintiff, however, did not file his complaint in the United States District Court for the Northern District of California until July 7, 1997, over seven years later. Once a defendant challenges jurisdiction, the plaintiff can no longer rely on unsupported allegations of jurisdiction, and must instead bring forth evidence to establish jurisdiction by a preponderance of the evidence. *See McNutt v. General Motors Acceptance Corp. of Indiana,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d 746, 748 (Fed.Cir.1988). Because the plaintiff has offered no convincing evidence, to negate defendant's assertions that the statute of limitations in his case began to run in March, 1990, the plaintiff has not met his evidentiary burden of establishing jurisdiction in this court under 28 U.S.C. § 2501. Because plaintiff's claim filed in the United States District Court on July 7, 1997, was filed more than six years after his cause of action accrued, this court has no jurisdiction to hear plaintiff's claim.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss is **GRANTED**, and the plaintiff's complaint is dismissed, with prejudice. The Clerk's Office shall issue a judgment consistent with this opinion.

**IT IS SO ORDERED.**