Gary W. BOWEN, Plaintiff,

v.

The UNITED STATES of
America, Defendant.

No. 99–352C.

United States Court of Federal Claims.

June 29, 2001.

Guy J. Ferrante, Springfield, Virginia, for plaintiff.

Brent M. McBurney, Washington, D.C., with whom were Harold D. Lester, Jr., Assistant Director, David M. Cohen, Director, and Stuart E. Schiffer, Acting Assistant Attorney General, Department of Justice, for defendant. Jennifer L. Grimm, Major, U.S. Air Force, and Karen Tibbals, Major, U.S. Air Force, Arlington, Virginia, of counsel.

## OPINION [1]

BASKIR, Chief Judge.

Plaintiff alleges that his termination from an Active Guard and Reserve position in the Alaska Air National Guard was unlawful. He seeks military pay, allowances and other benefits commensurate with the service and grade of the position. The Court finds it lacks jurisdiction to entertain the complaint because the claim is barred by the statute of limitations. **Accordingly, Defendant's motion to dismiss is granted. We do not, therefore, reach the merits of cross-motions for summary judgment.**

## BACKGROUND

Mr. Bowen, formerly a Major, filed this suit on June 1, 1999. Defendant contends that his claim is barred by the 6–year statute

---

1. This is a corrected version of the Opinion issued on June 26, 2001. No substantive changes have been made, only technical changes.

of limitations, 28 U.S.C. § 2501 (2001), because his claim accrued on the date of his effective termination from Active Guard and Reserve duty, which was May 28, 1993. According to the Government's argument, the deadline for the filing of this suit was thus May 28, 1999, and Plaintiff filed 4 days late.

Plaintiff counters that his suit is not barred because the date for determining the running of the statute of limitations is the day on which the Government's liability for back pay first arose, i.e., the first day for which Major Bowen was not paid, May 29, 1993. The claim was filed on the first business day that followed the last day of the statute of limitations on May 29, 1999—excluding Memorial Day and the weekend, the first business day was June 1, 1999. In any event, Plaintiff argues, the statute of limitations was tolled for at least 10 days by his military service subsequent to the Active Guard and Reserve termination, pursuant to section 525 of the Soldiers' and Sailors' Civil Relief Act.

Although the critical dates that bear on the statute of limitations issue are clear and undisputed, we relate the complex antecedents of the claim for the sake of completeness. The following facts are not in dispute, unless otherwise noted.

Plaintiff was appointed as an officer of the Alaska Air National Guard (ANG) in April 1983, and, as required by the dual federal and state militia nature of the National Guard system, was granted federal recognition the following July. In June 1984, he was assigned to a tour of duty with the Active Guard and Reserve ("AGR"), a full-time military program in which National Guard members support the National Guard and Reserve components pursuant to 32 U.S.C. § 502(f) and Air National Guard Regulation (ANGR) 35–03. AGR duty can be served either in a federal capacity or in a state capacity.

Major Bowen served his AGR tour of duty as a legal advisor in the Office of the Adjutant General of the Alaska ANG. He continued in this capacity until the spring of 1993. In March 1993, Major Bowen was notified by memorandum that he was officially relieved of his duties, pending the resolution of a proposal to terminate his AGR tour based on alleged misconduct. In May 1993, his tour of duty with the AGR was terminated, effective May 28, by special order of the Governor of the State of Alaska. It is undisputed that Major Bowen received notice and was fully aware of his effective termination date. That date, May 28, 1993, is the key date underlying the Government's statute of limitations argument.

Major Bowen subsequently filed a lawsuit in Alaska state court challenging the manner in which his AGR tour had been terminated. The Supreme Court of Alaska determined that, upon his assignment to AGR, Major Bowen had remained a state employee although he was paid with federal funds. *State Department of Military and Veterans Affairs v. Bowen*, 953 P.2d 888, 899 (Alaska 1998) (citing additional cases). The Alaska Supreme Court affirmed that the plaintiff had a property interest in full severance pay and held that he had a protected liberty interest in his reputation under the Alaska Constitution. *Id.* at 891. The court found that the protection of these interests entitled Major Bowen to an adversarial pre-termination hearing and affirmed the lower court's order that reversed and remanded the decision made by the Alaska State Department of Military and Veterans Affairs. *Id.* A pre-termination hearing by the Alaska ANG or the Alaska State Department of Military and Veterans Affairs was never held, allegedly because the need for one had been satisfied by a federal Efficiency Board hearing held by the U.S. Air Force.

Following the termination of Major Bowen's assignment to the AGR, the Adjutant General initiated a separate but related action to have him discharged from the Alaska ANG for misconduct and substandard performance. The U.S. Air Force conducted an Efficiency Board proceeding in which Bowen was represented by counsel and afforded opportunity for cross-examination. As a result of the findings of the Efficiency Board, the federal recognition afforded Major Bowen as a member of the Alaska ANG was revoked. He was discharged from the Alaska ANG effective April 1996.

In the meantime, Plaintiff requested, among other things, that the Air Force Board for Correction of Military Records (AFBCMR) revoke the termination of his AGR tour and restore him to AGR duty with back pay. The AFBCMR responded that it did not have jurisdiction because Plaintiff's AGR duty was subject to the exclusive command of the Adjutant General at the state level.

## DISCUSSION

Dismissal is appropriate when the Court lacks jurisdiction over the subject-matter. RCFC 12(b)(1). On a motion to dismiss for lack of jurisdiction over subject matter, the plaintiff bears the burden of establishing jurisdiction by a preponderance of evidence. *Reynolds v. Army and Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed.Cir.1988). The limited jurisdiction of this Court serves as a waiver of the sovereign immunity that the United States government otherwise enjoys. 28 U.S.C. § 1491 (2001). Congress has expressly provided a 6–year statute of limitations on all claims for which this Court would normally have jurisdiction. 28 U.S.C. § 2501. As a jurisdictional statute, section 2501 must be strictly construed. *See Cottrell v. United States*, 42 Fed.Cl. 144, 153 (1998). A timeliness issue, therefore, represents the threshold inquiry that the Court must confront. *See McCreary v. United States*, 35 Fed.Cl. 533, 544 n. 3 (1996).

### Date of Accrual

■ This is not the first time this Court has been asked to determine the appropriate date from which to run the statute of limitations on military pay claims. The weight of precedent supports the proposition that claims for compensation based on alleged unlawful separation by military personnel accrue on the date of discharge. *See Hurick v. Lehman*, 782 F.2d 984, 986 (Fed.Cir.1986) (citing additional cases).

■ Plaintiff's claim is based on his alleged unlawful termination from a tour of duty with the AGR while still serving in the Alaska ANG, not on his subsequent discharge from military service with the Alaska ANG. The broader principle underlying both actions is the same: a claim against the Government first accrues when all of the events have occurred which fix the alleged liability of the United States and the claimant was, or should have been, on notice. *See Colon v. United States*, 35 Fed.Cl. 515, 517 (1996); *see also Chandler v. United States*, 47 Fed.Cl. 106, 113 (2000).

■ The Government's obligation for AGR compensation ended on the effective date of Major Bowen's termination from AGR duty on May 28, 1993. As previously mentioned, it is undisputed that Major Bowen was relieved of his duties and notified of the termination well before that date. Defendant's alleged liability was thus fixed on May 28, 1993, and the statute of limitations began to run, subsequently barring Plaintiff's claim after May 28, 1999. The deadline date was a business day (Friday), so there is no call for an adjustment due to holidays and weekends.

Plaintiff misconstrues dicta to support his proposition that the date of accrual is the first day for which he was not paid. He cites *Chandler v. United States* as support. 47 Fed.Cl. 106, 114. In fact, *Chandler* expressly states that a military pay claim accrues on the date of discharge. *Id.* at 113. It is only in the context of addressing the element of notice that the court points out "notice of a cause of action can be implied through a cessation of military pay." *Id.* at 114. When "notice" is at issue in a statute of limitations dispute, the first date pay was not received may become relevant. But we have no "notice" issue in this case. Major Bowen has not denied that he had actual notice prior to the effective date of his termination from AGR duty.

Plaintiff's reliance on a hypothetical in the dicta of a Federal Circuit case is similarly misplaced. *See Cornetta v. United States*, 851 F.2d 1372, 1382 (Fed.Cir.1988). In that military pay case, the Government moved for dismissal based on the equitable defense of laches, not the running of a statute of limitations expressly provided for by Congress. *Id.* In finding that the Government did not suffer economic prejudice by the plaintiff's delay in filing suit, the court commented that the economic impact would have been the same "[i]f he had filed his claim at the first

opportunity, the day after he was discharged .... ." *Id.* Major Bowen relies on this throwaway comment in an attempt to convince this Court to ignore precedent and find that the statute of limitations began running the day after his date of discharge. The argument is not persuasive.

### Tolling Provisions of the Soldiers' and Sailors' Civil Relief Act

██ The Court must determine whether local National Guard training, conducted by state officials but with a federal paycheck, qualifies as "Federal service on active duty" within the meaning of the Soldiers' and Sailors' Civil Relief Act (SSCRA). 50 U.S.C.App. §§ 510–525 (2001). Based on SSCRA tolling provisions, Plaintiff's final argument regarding the timeliness issue is that the 6–year statute of limitations should be tolled for military service he performed subsequent to his termination from the AGR assignment. The SSCRA allows for the temporary suspension of civil proceedings for those who are engaged in "Federal service on active duty" for the United States. §§ 511(1), 525. Plaintiff contends that his federal pay for roughly two weeks of local National Guard training qualifies as the military service contemplated by the SSCRA. If applicable, the tolling provisions of the SSCRA would allow Plaintiff's time limit to be tolled by at least 10 days, thus rendering his claim timely. § 525.

The Government responds that local annual training in support of the State of Alaska does not qualify as military service for the purposes of the SSCRA. The SSCRA specifically provides "military service ... shall signify Federal ·service on active duty." § 511(1). Defendant points to the fact that Plaintiff was called to "local annual training (state)" by order of the Governor of Alaska. Special Order No. A–167. Defendant argues that the Act was not intended to include state militia training, even when federally funded.

The issue is complicated by the murky and mystical duality of the National Guard system. All those who enlist in a state militia or "National Guard" simultaneously enlist in the reserve component of the Federal Armed Forces, the "National Guard of the United States." *See Perpich v. Dept. of Defense*, 496

U.S. 334, 345, 110 S.Ct. 2418, 110 L.Ed.2d 312 (1990). Federal status as a reservist in the National Guard of the United States remains inactive until ordered into federal active service by an official acting under statutory authority. *See id.* at 343–45, 110 S.Ct. 2418. Until that time, reservists are designated as active state service members with *inactive* federal status. After ordered into federal service, they are designated as *active* federal service members who have been relieved of their state status. *See id.* at 347–348, 110 S.Ct. 2418; *see* 32 U.S.C. § 325(a) (2001).

It is apparent that the issue in this case turns on the definition of "Federal service on active duty" in the context of the Soldiers' and Sailors' Civil Relief Act. 50 U.S.C. § 511(1). There is nothing more in the Act to guide us beyond the definition provided in section 511. We are still left with the question of whether a federal paycheck for state National Guard training qualifies as "Federal service on active duty," as required by the SSCRA. *Id.* It is necessary to refer to other statutes in the United States Code that may shed light on a more precise meaning. *See Food and Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 120 S.Ct. 1291, 1301, 146 L.Ed.2d 121 (2000) (the meaning, or ambiguity, of certain statutory words or phrases may only become evident when placed in context).

Almost inevitably, there are conflicting provisions applicable to the military in our great body of statutes. In searching for the intended meaning of "Federal service on active duty," we find that the definitions of "active duty" provided in Title 10 and in Title 32 differ from the broader definition found in Title 37. Having reviewed the various provisions, we conclude that the meaning of "military service" for the purposes of the SSCRA is more logically paralleled in the organizational purposes of Title 10 and Title 32 than in the narrow compensation purposes of Title 37. Thus, the definitions of federal active service provided in Title 10 and Title 32 carry greater weight in construing the SSCRA than the definition found in Title 37. Our analysis follows.

Title 10 and Title 32 contain the bulk of the statutes concerning the United States Armed Forces and the National Guard. The definitions of "active duty" found in Title 10 and Title 32 specifically *exclude* "full-time National Guard duty." 10 U.S.C. § 101(d)(1) (2001); 32 U.S.C. § 101(12). "Full-time National Guard duty" is further defined in Title 10 and Title 32 as training "performed by a member of the ... Air National Guard of the United States in the member's status as a member of the National Guard of a State ... under sections 316, 502, 503, 504, or 505 of Title 32 for which the member is entitled to pay from the United States." 10 U.S.C. § 101(d)(5); 32 U.S.C. § 101(19). Although paid by the United States, Major Bowen completed local training *at the direction of* and *in support of* the State of Alaska. The orders he received for that active duty clearly recite that the duty is "local annual training (state)" and the orders are signed under the authority of the Governor of Alaska. By the definitions provided in Title 10 and Title 32, Bowen's training fell under "full-time National Guard duty," and is thus specifically excluded from the definition of "active duty."

An exception in Title 10 provides that, *for the limited purpose of providing benefits,* full-time National Guard training by members of the Air National Guard of the United States should be considered federal active duty. 10 U.S.C. § 12602(b)(1). The rule appears to be that full-time National Guard duty and state militia training in support of a state are not considered active federal service, even with a federal paycheck, except for the limited purpose of determining how that paycheck and related benefits will be measured. Under Title 10 and Title 32, therefore, Major Bowen's service was not "active duty" for purposes other than entitlement to federal pay. In other words, it was not "Federal service on active duty." Thus, his service does not qualify for the tolling provisions of the SSCRA.

The apparent discrepancy between the definitions of "active duty" found in Title 10 and Title 32 and the broader definition of "active duty" found in Title 37 can be reconciled. The broader definition of Title 37 is provided only for a limited federal purpose. By in-cluding full-time National Guard duty, the broader definition of "active duty" in Title 37 is necessary in order to provide federal pay and allowance for that state service. 37 U.S.C. § 101(18) (2001). We do not understand the Title 37 description of "active duty" to be synonymous with the definitions provided in Title 10 and Title 32. Instead, it serves as a mechanism for calculating pay. Moreover, Title 10 and Title 32 acknowledge that the member may be on full-time state National Guard duty but "entitled to pay from the United States" for local training. 10 U.S.C. § 101(d)(5); 32 U.S.C. § 101(19). That does not change the fact that full-time National Guard duty in support of a state does not qualify as federal active duty for other purposes. In other words, the member may receive a federal paycheck for local training under Title 37 but is nevertheless excluded from the Title 10 and Title 32 definitions of federal active duty.

We thus rely on Title 10 and Title 32 to conclude that the two weeks of local training completed by Major Bowen do not qualify as "Federal service on active duty" for the purposes of the SSCRA. 50 U.S.C. §§ 511, 525. The training was done by order of the Governor of Alaska in support of the state National Guard. It did not require the plaintiff to be called into active federal service. Therefore, the 6–year statute of limitations, 28 U.S.C. § 2501, is not subject to the tolling provisions of the SSCRA. Plaintiff's claim is barred by the statute of limitations.

## CONCLUSION

The Court **GRANTS** Defendant's motion to dismiss with prejudice. Each party is to bear its own costs.

**IT IS SO ORDERED.**