**Michael L. CURRY, Plaintiff,**

v.

**UNITED STATES, Defendant.**

No. 01–462C.

United States Court of Federal Claims.

July 8, 2002.

---

Michael L. Curry, plaintiff pro se.

Kathleen Z. Quill, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, for the United States. With her on briefs were Robert D. McCallum, Jr., Assistant Attorney General, David M. Cohen, Director, Bryant G. Snee, Assistant Director. LT W.A. Record, Trial Attorney, United States Navy, Office of the Judge Advocate General, was of counsel.

## OPINION

BRUGGINK, Judge.

Pending in this military pay case are defendant's motion to dismiss for lack of jurisdiction and plaintiff, Michael L. Curry's motions to compel production and for summary judgment.[1] The issues presented in this case are: when does a claim for back pay accrue, and when does the entitlement to pay expire for a serviceman confined because of a court-martial. For the reasons set out below, the plaintiff's motions are denied and the government's motion is granted.

## BACKGROUND[2]

Plaintiff, Michael L. Curry, entered the United States Marine Corps on a four year enlistment contract commencing April 3, 1989. On April 3, 1992, Mr. Curry was placed in pretrial confinement. On April 3, 1993, while he was still awaiting trial, Mr. Curry's four-year enlistment contract expired. Mr. Curry remained in confinement through April 17, 1993, when he was tried and convicted of conspiracy to commit premeditated murder, premeditated murder, murder, robbery, and kidnapping. Mr. Curry was sentenced to confinement for life to begin immediately, total forfeiture of pay and allowances, reduction in grade to E–1, and Dishonorable Discharge. Mr. Curry's Leave and Earnings Statements show that he was paid in monthly installments until June 1, 1993. The statement for June, 1993 (prepared July 7, 1993) is the first showing Mr. Curry receiving no pay and he has not been compensated by the military since.

On December 18, 1994, the convening authority approved the findings and the sentence, but suspended confinement in excess of 30 years. The ruling of the convening authority was affirmed by the Navy Marine Corps Court of Criminal Appeals. Mr. Cur-

---

1. Mr. Curry's motion for summary judgment also contained a motion to compel production of the "Department of the Navy–Marine Corps Litigation Report" allegedly produced for this case pursuant to 28 U.S.C. § 520 (1994). However, section 520 refers to correspondence between the Attorney General and other government agents and does not grant Mr. Curry any right to view such a document, if it exists. The administrative record contains all relevant facts and Mr. Curry

gives no reason why further discovery is required. Any other documents embraced by section 520 would be privileged. Accordingly, the motion to compel is denied.

2. The background facts are drawn from the complaint, amended complaint, and the appendices attached to both documents.

ry's petition to the United States Supreme Court for certiorari was denied. His dishonorable discharge from the Marine Corps took effect on March 5, 1999.

Mr. Curry petitions the court for all back pay and allowances as well as "illegal confinement" pay from the time his pay was terminated, June 1, 1993, until his final discharge, March 5, 1999. Mr. Curry also offers an alternative claim for pay accrued from June 1, 1993, until the approval of his court-martial sentence on December 18, 1994. In his complaint, Mr. Curry sought to have his discharge status changed from "dishonorable" to "honorable" and to have his court martial conviction reviewed. In later filings, however, Mr. Curry explicitly states that his claim is solely for monetary damages and disavows any intention to have the court review his conviction.

## DISCUSSION

We have jurisdiction over the subject matter under the Tucker Act 28 U.S.C. § 1491 (1994), in conjunction with the military pay statute 37 U.S.C. § 204 (1994). *Osborn v. United States,* 47 Fed.Cl. 224, 229 (2000) (citing *Tippett v. United States,* 185 F.3d 1250, 1255 (Fed.Cir.1999)). The six-year statute of limitations for instituting a claim against the United States, 28 U.S.C. § 2501, is a jurisdictional requirement, however, which cannot be waived. *Spehr v. United States,* 51 Fed.Cl. 69, 91 (2001) (citing *Farrell v. United States,* 9 Cl.Ct. 757, 758–59 (1986)).

■ A claim against the government first accrues "on the date when all the events have occurred which fix the liability of government and entitle the claimant to institute an action." *Oceanic S.S. Co. v. United States,* 165 Ct.Cl. 217, 225, 1964 WL 8621 (1964). *See also Hopland Band of Pomo Indians v. United States,* 855 F.2d 1573, 1577 (Fed.Cir. 1988) (holding that a claim accrues "when all the events which fix the government's alleged liability have occurred and the plaintiff was or should have been aware of their existence"). In the case of pay claims, our predecessor court held that a pay claim accrues when the government first fails to make a salary payment. *Middleman v. United States,* 91 Ct.Cl. 306, 308, 1940 WL 4143

(1940) ("If the plaintiff had any right to bring this suit for his salary, it accrued when the defendant first failed to make payment of his monthly salary"); *Chandler v. United States,* 47 Fed.Cl. 106, 113–14 (2000) (quoting *Middleman* ); *Zoesch v. United States,* 226 Ct.Cl. 557, 558, 1980 WL 99720 (1980). Mr. Curry filed his complaint on August 8, 2001. Consequently, the events which fix the government's alleged liability must have occurred after August 8, 1995, in order for the court to have jurisdiction.

■ Mr. Curry asserts that his claim accrued on March 5, 1999, the date of his discharge, when a final accounting of pay should, according to plaintiff, have been conducted, but was not. It is undisputed, however, that the last payment Mr. Curry received was on June 1, 1993. The Leave and Earnings Statements included in appendices one through six of Mr. Curry's amended complaint demonstrate that the payment for June, 1993, prepared July 7, 1993, was the first in which Mr. Curry was not paid. If Mr. Curry was entitled to pay beyond June 1, 1993, as he alleges, then all the events which fix the government's liability occurred by July 7, 1993, well beyond the limitations period.

Mr. Curry asserts that, because administrative glitches within the military pay system are so common and are often corrected in time, the accrual of a potential claim against the government at the time payment ceased was "inherently unknowable" within the meaning of *Japanese War Notes Claimants Ass'n v. United States,* 178 Ct.Cl. 630, 634, 373 F.2d 356 (1967). But the possibility that the government's failure to pay after June 1, 1993, could theoretically have been a self-correcting glitch does not delay the accrual of a claim based on that non-payment. Suspension of the limitations period requires that a plaintiff show either that the "defendant has concealed its acts with the result that plaintiff was unaware of their existence or it must show that its injury was 'inherently unknowable' at the accrual date." *Id.* at 634, 373 F.2d 356. The Leave and Earning Statements demonstrate that the government did not conceal non-payment. Those statements, as well as the absence of pay-

ment, would have made non-payment apparent after July 7, 1993.

In support of his theory that his claim for back pay accrued on the date of his discharge, Mr. Curry cites *United States v. King*, 27 M.J. 327 (CMA1989), which held that a final accounting of pay is required to effectuate a discharge. But if Mr. Curry's pay was wrongfully stopped prior to discharge, as he claims, the allegedly erroneous final accounting of pay that took place at the time of the discharge is irrelevant for statute of limitations purposes. Mr. Curry had been receiving monthly payments through June 1993. If the termination of pay that was apparent in the Leave and Earnings Statement prepared July 7, 1993 was wrongful, as Mr. Curry claims, then his claim accrued on that date.

Additionally, it should be noted that although "a claim based on an unlawful discharge from the military accrues on the date of discharge" *Bowen v. United States*, 292 F.3d 1383 (Fed.Cir.2002) (quoting *Hurick v. Lehman*, 782 F.2d 984, 986 (Fed.Cir.1986)), plaintiff is not claiming that an unlawful discharge deprived him of pay. Rather, he claims to be entitled to pay up to the date of his discharge. In other words, his claim itself includes the period between his last payment (June 1, 1993) and his discharge (March 5, 1999).

■ When a service member on active duty is convicted in a court-martial, final discharge is delayed until all appeals have been exhausted. 10 U.S.C. § 871(c) (1994). Mr. Curry's salary and benefits ceased before his discharge for reasons that will be examined later in this opinion. We have held, however, that when payment ceases before a discharge that was delayed due to court-martial appeals, a claim for back pay first accrues on the date when payment was due. *Allen v. United States*, 46 Fed.Cl. 677, 680–81 (2000).

In *Zoesch*, the court summed up the reasons for its decision to dismiss the plaintiff's military pay claim on statute of limitation grounds with the following statement:

> Plaintiff could have originally brought this action some fourteen years ago (1966), af-

ter the Navy failed to pay him the benefits to which he claims he is entitled. At that time, all the material facts upon which the claim depends had occurred. In other words, the claim had "first accrued" some fourteen years ago.

*Zoesch*, 226 Ct.Cl. at 558 (citing *Oceanic S.S. Co.*, 165 Ct.Cl. at 225). Similarly, Mr. Curry had the facts necessary to bring the present claim by July 7, 1993, when compensation ceased. Therefore, that is the date at which the present claim accrued.

■ One final exception to the running of the limitations period, although not asserted by plaintiff, must be considered. That is the doctrine of continuing claims. Under the continuing claims doctrine, periodic pay claims arising within the six-year period prior to filing the complaint are viable even though the limitations period may have run for previous payment obligations. *Friedman v. United States*, 159 Ct.Cl. 1, 6, 310 F.2d 381 (1962) (rehearing denied). If the continuing claims doctrine were applied to the present case, the court would still have jurisdiction to award damages for any illegal non-payment from August 8, 1995, through the present.

The continuing claims doctrine has had something of a checkered history, *compare Hart v. United States*, 910 F.2d 815, 818 (Fed.Cir.1990), *with Acker v. United States*, 23 Cl.Ct. 803, 805–96 (1991), but the Federal Circuit has more recently upheld its application in *Hatter v. United States*, 203 F.3d 795 (Fed.Cir.2000). In doing so, the court emphasized the qualifications of the doctrine established in *Friedman*. *Id.* at 797.

*Friedman* teaches that in the cases in which the continuing claims doctrine has been applied:

> (a) Congress had not entrusted an administrative officer or tribunal with the determination of the claimant's eligibility for the particular pay he sought; (b) the cases turned on pure issues of law or on specific issues of fact which the court was to decide for itself (i.e. Congress had not established any administrative tribunal to decide either the factual or the legal questions); (c) in general the cases called upon the court to resolve sharp and narrow factual issues not demanding judicial evaluation of broad

concepts such as "disability" (concepts which involve the weighing of numerous factors and considerations as well as the exercise of expertise and discretion). *Friedman*, 159 Ct.Cl. at 7. Mr. Curry's claim shares some of these characteristics. There is no Congressionally appointed officer or tribunal to rule on his claim under element (a). *Cf. Polite v. United States*, 24 Cl.Ct. 508, 510–11 (1991). And, unlike many military pay claims, Mr. Curry's claim does not require closer examination of the facts, which would have made his claim ineligible for the continuing claims doctrine under elements (b) and (c). *Cf. Zoesch*, 226 Ct.Cl. at 558. Rather, Mr. Curry relies on the records as the undisputed facts supporting his claim. Specifically, he claims that he is entitled to back pay because, while his pay ceased June 1, 1993, the sentence forfeiting his pay was not approved by the convening authority until December 18, 1994, and he was not discharged until March 5, 1999.

The possibility that some of his claims accrued after August 8, 1995, thus warrants considering their validity on their merits as viewed from the face of the unamended complaint. Even if the continuing claims doctrine could be applied, however, any claim for monetary damages within six years of the filing of the claim would nevertheless fail, as explained below.

Payment of military personnel is governed by the Department of Defense Pay Manual (DODPM). *Knight v. United States*, 26 Cl. Ct. 328, 330 (1992). Section 10316 of the 1993 edition of the DODPM governs pay during military confinement. Subsection (a)(3) states that "pay and allowances accrue to a member in military confinement except: . . . [w]hen the term of enlistment expires. See paragraph 10317, below." Section 10317(c), titled "Enlistment Expires Before Trial," in turn provides that "[a]n enlisted member retained in the service for the purpose of trial by court-martial is not entitled to pay for any period after expiration of the enlistment unless acquitted or the charges are dismissed, or the member is retained in or restored to a full-duty status." Section

10317(d) titled "Confined Awaiting Trial by Court–Martial," says essentially the same thing: "[i]f a member is confined awaiting court-martial trial when the enlistment expires, pay and allowances end on the date the enlistment expires. If the member is acquitted when tried, pay and allowances accrue until discharge." [3]

The effect of these DODPM provisions is that Mr. Curry's entitlement to pay ceased when his enlistment expired on April 3, 1993. The act that Mr. Curry received his final payment on June 1, 1993, may well have been the result of a glitch in the payment system in his favor. As mentioned above, Mr. Curry's appeals were unsuccessful, so no payment accrued after his enlistment expired. *See* DODPM 10317(c)–(d).

■ The court has repeatedly held that a service member's right to pay ends when his enlistment expires if he is serving a court-martial sentence at that time. *Reed v. United States*, 23 Cl.Ct. 517, 521 (1991); *Knight v. United States*, 26 Cl.Ct. 328, 330 (1992). However, in both *Knight and Reed*, the service member's enlistment expired after conviction, while he was serving his sentence. Mr. Curry's enlistment expired April 3, 1993, two weeks before his conviction on April 17, 1993. It is true that Mr. Curry was paid past the expiration of his enlistment so that his pay actually ceased after his conviction, while he was serving his sentence. Nonetheless, the fact that the expiration of Mr. Curry's enlistment occurred before his conviction makes this case more complicated than defendant suggests.

■ Mr. Curry asserts that the timing of the expiration of his enlistment differentiates his claim from those of Reed and Knight and makes his situation similar to that of *Dickenson v. United States*, 163 Ct.Cl. 512, 1963 WL 8493 (1963). In *Dickenson*, the serviceman's enlistment expired April 15, 1953, while he was a POW in the Korean conflict. *Id.* at 515. After repatriation, Dickenson was court-martialed for aiding the enemy and misconduct as a prisoner of war. *Id.* at 516–17. Dickenson was paid until January

---

**3.** Section 10316 is numbered 030206 in the current DODPM and Section 10317 is currently 030207, but neither section has changed in any relevant way.

22, 1954, the date he was charged and placed in confinement to await trial. Dickenson was later convicted and sentenced to dishonorable discharge, forfeiture of all pay and allowances, and confinement for ten years. His sentence was adjudged May 4, 1954, and approved by the convening authority on July 13, 1954. The court held that Dickenson's confinement awaiting court-martial was for the convenience of the government and that he was thus entitled to pay for the period up until the convening authority approved his sentence. *Id.* at 519–520.

Unlike the plaintiff in *Dickenson,* however, Mr. Curry was paid through the date of his trial and conviction, and was therefore serving his sentence, not confined awaiting trial, at the time his payment ceased. Defendant asserts that this makes Mr. Curry's case similar to *Reed* and *Knight,* not *Dickenson.* It essentially argues that because Mr. Curry was paid for all time he was confined awaiting trial, including the two weeks between the expiration of his enlistment and his conviction, he was never confined for the government's convenience, unlike the plaintiff in *Dickenson.* But 10 U.S.C. § 857, which was cited by the court in *Dickenson,* suggests that the relevant date is that of the convening authority, not the date of trial and conviction. *Dickenson,* 163 Ct.Cl. at 520. The version of section 857(a) in effect in 1993 provided that "[n]o forfeiture may extend to any pay or allowances accrued before the date on which the sentence is approved by the person acting under section 860(c) of this title (article 60(c))." [4] 10 U.S.C. § 857(a). *See* Pub.L. No. 98–209, 1983 U.S.C.C.A.N. (97 Stat.) 1393, 1400. Section 860 gives the convening authority discretion over the findings and sentence of a court-martial proceeding. 10 U.S.C. § 860. Section 857 thus seems to conflict with the DODPM regulation 10317(d), cited above, because the regulation calls for pay to

cease upon the expiration of enlistment if that occurs while a service member is confined awaiting trial, while section 857 postpones forfeiture of pay and allowances until the approval of the convening authority, which, by definition, occurs after trial.

The court has not always treated section 857 as controlling, and the precedent established in *Dickenson* is not altogether unanimous. In *Moses v. United States,* 137 Ct.Cl. 374, 1957 WL 8298 (1957), the court cited a rule announced by the Comptroller General that is identical in substance to DODPM 10317(d), holding that the entitlement to pay of a service member confined awaiting trial ends on the date of the expiration of his enlistment, not the date that the sentence (including a forfeiture of pay) was approved by the convening authority. *Moses,* 137 Ct. Cl. at 380 (quoting 30 Comp. Gen 449, 451).[5] It is also worth noting that the court in *Dickenson* did not explicitly disagree with the holding in *Moses. Dickenson,* 163 Ct.Cl. at 518. The court in *Dickenson* differentiated *Moses* because, in *Dickenson,* the serviceman's enlistment expired while he was a POW, not while he was confined awaiting trial. *Id.* at 519. Therefore, the court held in *Dickenson* that 30 Comp.Gen. 449 did not fit the facts of that case. Consequently, it could plausibly be argued that the precedent in *Dickenson* is not applicable to Mr. Curry's claim.

Although the court might be expected to give a statute greater weight than a DODPM regulation, the issue of whether service members confined awaiting trial by court-martial are entitled to pay after their enlistment expires need not be decided in this opinion. Even if Mr. Curry has a viable claim, based on the court's holding in *Dickenson,* for pay until his convening authority acted, that particular part of his claim would still be barred

---

4. Section 857(a) was amended in 1996 to hold that any forfeiture of pay or allowances or reduction in grade that is included in a sentence of a court-martial would take effect on the earlier of (A) the date that is fourteen days after the date on which the sentence is adjudged; or (B) the date on which the sentence is approved by the convening authority.

5. 30 Comp.Gen. 449 states in relevant part: "the pay and allowances of an enlisted person whose term of enlistment expires while he is in confinement, awaiting trial by court martial, terminate on the date of the expiration of his term of enlistment unless he is acquitted, in which event pay and allowances accrue until he is discharged." *Dickenson,* 163 Ct.Cl. at 518 (quoting 30 Comp.Gen. 449).

by the statute of limitations. There is no question that forfeiture of pay and allowances can be a viable sentence subsequent to conviction in a court-martial. *Id.* at 520. Because Mr. Curry's appeals were unsuccessful and his sentence was never overturned, there is no basis for pay beyond the date of the convening authority. The only pay claim that could possibly be viable on the merits, therefore, is for the time between cessation of pay on June 1, 1993, until the approval of the convening authority, December 18, 1994. Mr. Curry filed his claim August 8, 2001. So even under the continuing claims doctrine, no valid claim arose after August 8, 1995. Since the convening authority approved Mr. Curry's sentence well before that time, the statute of limitations precludes jurisdiction over the only potentially valid aspect of Mr. Curry's claim.

## CONCLUSION

The court has no jurisdiction over Mr. Curry's claim because it is beyond the six-year statute of limitations period. The government's motion to dismiss for lack of jurisdiction is granted. Mr. Curry's motions to compel discovery and for summary judgment are denied. Judgment accordingly. No costs.