Charles R. COMBS, Plaintiff,

v.

THE UNITED STATES, Defendant.

No. 99–904C.

United States Court of Federal Claims.

Nov. 7, 2001.

Alison Ruttenberg, Boulder, Colorado, attorney of record for plaintiff.

Christian J. Moran, Washington, D.C., with whom was Assistant Attorney General Robert D. McCallum, Jr., for defendant.

## OPINION ON THE PARTIES' CROSS–MOTIONS FOR JUDGMENT ON THE ADMINISTRATIVE RECORD

REGINALD W. GIBSON, Senior Judge.

### INTRODUCTION

This case involves a dispute over military pay due to plaintiff, Charles R. Combs ("Mr. Combs" or "plaintiff"), by the United States Air Force ("the Air Force" or "defendant"), his former employer. In general terms, the instant dispute arises from plaintiff's September 26, 1990 conviction of murder, with a sentence to confinement, forfeiture, and reduction in rank, and the subsequent action taken by the Air Force thereon regarding his entitlement to appropriate pay.

The catalyst of the dispute is that plaintiff's initial conviction was overturned on October 8, 1992, and plaintiff was released from confinement with a re-trial on his charges ordered shortly thereafter. On March 22, 1995, plaintiff was again convicted of murder, and sentenced, again, to confinement and reduction in rank. During the period between his first sentence and his second sentence for the crime of murder, plaintiff's term of enlistment had expired and, at various times, he was alternatively placed by the Air Force on both 'appellate leave,' and 'full duty' status. Additionally, two military courts passed judgment on plaintiff's allegation that he was subjected to unlawful pre-trial punishment because he was reduced in rank too early in the relevant time frame.

Eventually, plaintiff was discharged from the Air Force. The foregoing circumstances caused plaintiff to be paid at a lower rate than his original pre-conviction grade, and, at certain times, not to be paid at all. Plaintiff's legal status is governed by applicable statutes and military regulations, which determine his entitlement to pay during various time periods between his reduction in rank of June 10, 1991 and his March 6, 1998 discharge.

This instant opinion addresses the parties' cross-motions for judgment on the administrative record as to liability. In rendering our decision herein, we address the numerous nuances that are present in the body of military law and regulations regarding the foregoing complex facts and time line at bar. The majority of the material facts are not in dispute between the parties, with the balance of relevant facts easily discernible from the administrative record as supplemented. Thus, the issues before us are purely legal determinations, which we, accordingly, make herein. Ultimately, we order that plaintiff is entitled to pay for the periods set forth in our conclusion. In addition, while we are determining plaintiff's entitlement to pay, we are not, however, calculating the actual amounts, which will be the subject of further proceedings below in this case.

### FACTS AND PROCEDURAL HISTORY

Plaintiff enlisted in the United States Air Force as an Airman Basic, or the rank of E–1, on July 21, 1977. During his career in the Air Force up to 1990, plaintiff married, had two children, and had been promoted to Technical Sergeant, also known as the rank of E–6. In February 1990, while plaintiff was living at Camp Foster, Okinawa, it was alleged by military authorities that he had physically assaulted his daughter. Pursuant to these allegations, plaintiff was ordered by military authorities that he could only be with his children under supervision, *i.e.*, he could not be alone with them.

On March 28, 1990, plaintiff's wife, in contravention to the aforementioned order, requested that plaintiff remain at home alone with his daughter and son, both whom were infants at the time, while she went to work.

. At some point during that day, it is apparent that plaintiff assaulted his daughter and murdered his infant son. As a result of his heinous actions, plaintiff was tried by court-martial and was convicted, on September 26, 1990, of: 1) unpremeditated murder of his son; 2) assaulting his daughter; and 3) disobedience of the order that he not be alone with his children. Pursuant to this conviction, plaintiff was sentenced to the following on the same date: 1) 50 years confinement, to begin immediately; 2) dishonorable discharge; 3) total forfeiture of pay;[1] and 4) reduction in rank from E–6 to E–1.

On June 10, 1991, plaintiff's rank was officially reduced by the appropriate military convening authority from E–6 to E–1. *See infra* note 6. It is important to note that the parties *do not dispute* plaintiff's entitlement to pay, or rate of pay, for any time period prior to this date. Pursuant to the approval of his sentence, the Air Force ceased paying plaintiff on June 10, 1991. Subsequent to plaintiff's reduction in rank and forfeiture, however, his murder conviction was reversed by the Air Force Court of Military Review ("Air Force Review Court") on October 8, 1992. The court cited the main reason for the reversal as being the trial court's refusal to allow the testimony of one of plaintiff's expert witnesses. While the Air Force Review Court did *not* also set aside the convictions for assault and disobedience, it set aside plaintiff's *entire* sentence, and ordered a new hearing on the still-existing murder charge.

Pursuant to the Air Force Review Court's action, plaintiff was released from confinement on October 21, 1992 and, by order of the Air Force military authority, became 'Present For Duty.'[2] Shortly after plaintiff's release from confinement, on November 4, 1992, the Judge Advocate General Corps certified his overturned conviction and sentence for review by the United States Court of Military Appeals (now called the "United States Court of Appeals for the Armed Forces"), the highest military court.

After plaintiff was released from confinement and placed on full duty status, the Air Force continued to keep him at the reduced rank of E–1, which was part of his original overturned sentence, and it continued paying him at the lower rate commensurate with that rank. Initially, the Air Force determined that it was in error for doing this, and paid plaintiff, in December 1992, $17,913 to reimburse him for having been paid at the lower E–1 rate, or not at all, since June 10, 1991. In an interesting turn of events, the Air Force reversed this position approximately one month later and, yet again, began to pay plaintiff at the rank of E–1. As a consequence of this decision, the Air Force, in January 1993, requested that plaintiff pay it back the $17,913. In that same month, plaintiff unequivocally refused to return the money, and, eventually, the Air Force recovered the amount by docking plaintiff's E–1 rate of pay during the months following January 1993.

Plaintiff was retained on full duty status at the rank of E–1, and the record shows that he was given tasks commensurate with that rank and of significantly less responsibility than what he had before his reduction in rank. Additionally, plaintiff was not allowed to wear his sergeant stripes, or have any of the benefits of his previous rank of E–6. Furthermore, plaintiff alleges that, in addition to the foregoing, he was basically "still · treated like a prisoner" while he was on full duty status as an E–1. Compl. at 2.

For reasons which are unclear to the court, plaintiff requested that he be placed on 'excess leave,' or what is commonly know as 'appellate leave' ("excess leave" is hereinafter

---

1. Total forfeiture of pay is "applicable to [all] pay and allowances accruing on and after the date on which the sentence takes place." 10 U.S.C. § 857(a)(3) (2001). Thus, plaintiff was disallowed, pursuant to statute, any pay he would have been entitled to from September 26, 1990 and beyond.

2. The term 'Present for Duty' means that an Air Force member is placed on 'full duty' status.

"Full duty. is attained when a member not in confinement is assigned useful and productive duties (as opposed to duties prescribed by regulations for confinement facilities) on a full-time basis which are not inconsistent with the grade, length of service, and military occupational specialty (MOS)." Department of Defense ("DOD") Financial Management Regulation, Volume 7A ¶ 030207(A) (February 2000).

referred to in this opinion as "appellate leave"), at some point after his October 21, 1992 release. Under the relevant statutes and military regulations, appellate leave is a particular status on which a military member can be placed by the appropriate military authority whereby he or she is not on full duty status, as defined above, and is awaiting the completion of the appellate process of his or her court-martial conviction. 10 U.S.C. §§ 876a, 706, 707. As will be explained *infra* at subsection C, a member on appellate leave is usually not entitled to be paid at all. On August 9, 1993, plaintiff's request to be put on appellate leave was denied by the Air Force. Later that same month, on August 30, 1993, plaintiff's term of enlistment expired.[3] Pursuant to 10 U.S.C. § 802, the Air Force retained plaintiff in its ranks in order to re-try him on the murder charge.[4] As will be explained *infra*, depending on the status of plaintiff's conviction, and the Air Force's actions pursuant to such status, this circumstance could have a large impact on plaintiff's entitlement to pay.

On October 9, 1993, the Air Force, for reasons unknown to us at this time, officially placed plaintiff on appellate leave and ceased paying him. This status, however, lasted for less than a year because on June 15, 1994, the United States Court of Military Appeals completed its review of plaintiff's initial murder conviction, sentence, and Air Force Review Court's overturning of each, and affirmed the October 8, 1992 decision to overturn. Likely a direct result of the Court of Military Appeals' decision, the Air Force, on July 19, 1994, took plaintiff off of appellate leave status and placed him again on full duty status. A notable point is that the Air Force form used to effectuate this personnel action indicates plaintiff as an E–6 "grade" and states: "member is restored to full pay and allowances." Admin. Rec. 26.

The second period of full duty status continued from July 19, 1994 to March 22, 1995, the date of plaintiff's second conviction, sentence, and confinement for murdering his son. During this second period of full duty status, plaintiff was still retained as an E–1 and paid accordingly. On March 22, 1995, during plaintiff's re-trial on the murder charge, he pled guilty to unpremeditated murder in exchange for the following sentence, which was imposed on the same day: 1) 21 years confinement to begin immediately; 2) reduction to the rank of E–1; and 3) dishonorable discharge. Notable is that the second trial court did not impose forfeiture of pay.[5]

Plaintiff's sentence was approved by the convening authority[6] on August 10, 1995.

---

**3.** A military member's 'term of enlistment' is simply defined as a "period of obligated service," which, in other words, is the time period that a member has agreed to serve in the particular military branch. 10 U.S.C. § 1174(e)(2)(B).

**4.** Particularly, 10 U.S.C. § 802(d)(1) states: "A member ... may be ordered to active duty involuntarily for the purpose of... trial by court martial." Further illustrating the Air Force's authority in this area, paragraph 030207(C) of the DOD Financial Management Regulation states: "[a]n enlisted member *retained in the Military Service for the purpose of trial by court-martial* is not entitled to pay for any period after expiration of the enlistment [term] unless acquitted or the charges are dismissed, or the member is retained in or restored to a full-duty status." Volume 7A (February 2000) (emphasis added).

**5.** While the court did not officially impose forfeiture of pay as part of its sentence, plaintiff, as will be explained *infra* at subsection D, was not paid by the Air Force after his sentence date of March 22, 1995. *See* 37 U.S.C. § 804 (repealed Feb. 10, 1996) ("Pay and allowances do not accrue to an enlisted member of the Army or the Air Force who is in confinement under sentence of dishonorable discharge, while the execution of the sentence to discharge is suspended."). Notwithstanding that the reason the trial court did not impose forfeiture is irrelevant to our instant decision, we note that the court-martial tribunal, in all likelihood, did not impose such because it wished to have plaintiff's *benefits, i.e.,* medical, available to the surviving members of his family.

**6.** "The authority to convene courts-martial, and to refer and withdraw specific charges, is vested in convening authorities." 32 C.F.R. § 776.47 (2000). "The authority under this section to modify the findings and sentence of a court-martial is a matter of command prerogative involving the sole discretion of the convening authority.... The convening authority ... in his sole discretion, may approve, disapprove, commute, or suspend the sentence in whole or in part." 10 U.S.C. § 860. In other words, as the title suggests the convening authority is the person(s) empowered by the military corpus to bring

This approval was necessary, under military law, in order for the sentence to be final. 10 U.S.C. § 860. The fact that the court-martial sentence is final, however, does not mean it is non-reviewable by the military appellate courts. 10 U.S.C. § 866(b) ("The Judge Advocate General shall refer to a Court of Criminal Appeals the record in each case of trial by court-martial ...."). Accordingly, by plaintiff's petition, the United States Air Force Court of Criminal Appeals ("Air Force Appellate Court") reviewed his case, and affirmed his conviction and sentence on July 30, 1996. *United States v. Combs*, ACM 29305, slip op. (A.F.Ct.Crim.App. July 30, 1996). Additionally, in the same opinion the court addressed plaintiff's allegations that he was subjected to unlawful pre-trial punishment, pursuant to 10 U.S.C. § 813,[7] during the period between the time his first conviction was overturned (October 8, 1992) and his second conviction (March 22, 1995). On review, plaintiff sought confinement credit for what he described as actions taken by the Air Force in contravention to § 813.

In addressing plaintiff's allegations of unlawful pre-trial punishment, the Air Force Appellate Court held that, while plaintiff was entitled to wear his rank as an E–6 and *to be paid as such,* during the periods he was on active duty, there was no "punitive intent" on the part of the Air Force in denying him those benefits by reducing him in rank to E–1. *Combs*, ACM 29305, slip op. at 6. Instead, the court held that plaintiff's reduction in rank was likely the result of "ambiguity of [plaintiff's] position, and the lack of clear guidance from competent authority as to his legal status." *Id.* Thus, the court denied plaintiff's request for confinement credit, ruling that the Air Force did not violate 10 U.S.C. § 813.

On March 4, 1997, the Court of Appeals for the Armed Forces ("the CAAF") granted review of the July 30, 1996 Air Force Appellate decision above on the sole issue of plaintiff's request for confinement credit due to the Air Force's alleged violation of § 813 from October 8, 1992 to March 22, 1995, the period between the overturning of his first conviction and his second conviction. On this issue, the CAAF overruled the Air Force Appellate Court, holding that the Air Force did, in fact, violate § 813 by reducing plaintiff's rank from E–6 to E–1 while he was awaiting his second trial. *United States v. Combs*, 47 M.J. 330 (C.A.A.F.1997). Particularly, the court ruled that: "[a]ppropriate credit, however, must be limited to the period of time which he was on active duty and suffered the ignominy and other harm from this unlawful demotion. The record reveals this prejudice occurred from October 21, 1992, to October 8, 1993, and from July 19, 1994, to March 22, 1995, a total of 20 months [that plaintiff was on active duty as an E–1]." *Id.* at 334.

Consequently, the CAAF awarded plaintiff 20 months of confinement credit. It is important to note, however, that the CAAF gave plaintiff confinement credit only, and did not order the Air Force to pay plaintiff the difference between the E–1 and E–6 rate, nor did it award him *any* financial relief, a monetary issue it chose not to entertain in the criminal context. 10 U.S.C. § 867 (jurisdiction of Court of Appeals for the Armed Forces limited to criminal cases).[8]

Completing the events which frame the pay entitlement issues in this case, plaintiff was officially discharged from the Air Force on March 6, 1998. At some point after this date, plaintiff filed a written request with the U.S. Defense Finance and Accounting Service ("the DFAS") for additional pay, which would effectively give him the E–6 rate of pay for the period June 10, 1991 (when he was officially reduced in rank) until March 6, 1998 (the date of his discharge). Plaintiff

---

criminal charges in a court-martial proceeding against a service member and such person(s) is usually the member's commanding officer(s). 10 U.S.C. § 822.

**7.** 10 U.S.C. § 813 states in relevant part that: "[n]o person, while being held for trial, may be subjected to punishment or penalty other than arrest or confinement upon the charges pending

against him, nor shall the arrest or confinement imposed upon him be any more rigorous than the circumstances require to insure his presence ...."

**8.** As will be explained *infra* at subsection B, the U.S. Court of Federal Claims has sole jurisdiction now over plaintiff's instant *civil* monetary claim against the Air Force.

had filed similar requests at various times throughout the aforementioned time period, which were subsequently denied by the Air Force. *See* Admin. Rec. at 31–61. The record shows, however, that plaintiff received a written response to his post-March 6, 1998 request from Don Burnes, a Fiscal Quality Specialist at the DFAS, on December 16, 1999, which stated, *inter alia*, that plaintiff *was* "due pay and allowances for the period of time . . . [plaintiff] w[as] on appellate leave [October 9, 1993 to July 19, 1994]." Supp. Admin. Rec. at 15–16.

Apparently, a DFAS audit of plaintiff's request for pay entitlement was undertaken, and, while it is not easily discernible from the administrative record when it was actually completed (ostensibly after the December 16, 1999 letter from Don Burnes), it is apparent that the audit concluded plaintiff was not entitled to the E–6 rate of pay at any time and he was not entitled to any pay during the period he was on appellate leave. Accordingly, the Air Force, without holding any formal proceedings, denied plaintiff's request for additional pay.[9]

As a consequence of the above events occurring prior to October 29, 1999, plaintiff filed his single-count complaint in this court, on said date, requesting unspecified amounts of back pay encompassing, *inter alia*, pay entitlement at the E–6 rate [10] for the period May 1, 1991 to March 22, 1995. In lieu of filing an answer pursuant to Rule 12(a) of the Rules of the U.S. Court of Federal Claims ("RCFC"), defendant filed a motion for judgment on the administrative record on May 9, 2000, along with the administrative record itself. In said motion, defendant alleges that it owes plaintiff only $2,328.99 because of administrative errors made by the Air Force, as indicated by the DFAS audit.

On June 27, 2000, plaintiff filed its brief in opposition to defendant's motion and a cross-motion for judgment on the administrative record. In this filing, plaintiff specifies $120,783 in damages. Additionally, plaintiff alleges therein that defendant did not provide a complete administrative record and, consequently, filed therewith a supplemental administrative record. On August 10, 2000, defendant filed its responsive pleading, requesting, *inter alia*, that quantification of any damages be resolved after the pay entitlement issues are addressed. Finally, on August 31, 2000, plaintiff filed its reply brief and also requested that the court defer calculation of damages to a later date, ostensibly after we have fully ruled on the pay entitlement issue. Considering the record we have before us, which indicates that date-specific pay tables are needed from the Air Force to calculate actual damages, and that various assumptions must be made in the calculations that can only be determined until judgment on the merits is made, we concur with the parties' request. Thus, the issue regarding the exact amount of pay due to plaintiff for the relevant time periods will be addressed at a later date.

We note that defendant has not challenged our jurisdiction in this case, nor has it alleged that plaintiff failed to exhaust his administrative remedies, which the record bears out. Accordingly, the following section explains our jurisdiction over this matter and the standards we must use in ruling on the instant cross-motions for judgment on the administrative record. In the second and final section, we resolve plaintiff's pay entitlement in four (4) separate subsections, which we logically divide into the following time periods:

A) June 10, 1991 (the date plaintiff's rank was officially reduced to E–1) to October 8,

---

**9.** Again, we are unable to discern from the administrative record exactly when the Air Force issued its final denial to plaintiff, but it is apparent from the totality of the record that such was, in fact, effected.

**10.** In his complaint, plaintiff cites the provisions of 37 U.S.C. §§ 204, 206, 402, 403, and 403a as support for his pay entitlement claim. The court notes that these provisions address generally service-members' pay entitlement and computation

thereof, but do not address the specific pay entitlement issues which are involved in this case, to wit, *in the court-martial context*. As such, and considering that the court is not addressing actual computation of pay in this opinion, we will only briefly discuss the relevant portions of these statutory provisions *infra* as they relate to jurisdiction. Beyond jurisdiction, however, they are inapposite to the specific issues we are ruling upon herein.

1992 (the date plaintiff's first court-martial conviction was overturned);

B) October 9, 1992 to October 8, 1993 (plaintiff's first period of active duty since his September 26, 1990 court-martial conviction) *and* July 19, 1994 to March 21, 1995 (plaintiff's second period of active duty lasting until his second conviction);

C) October 9, 1993 to July 18, 1994 (period that plaintiff was placed on appellate leave status); and

D) March 22, 1995 (date of plaintiff's second court-martial conviction and sentence) to March 6, 1998 (date plaintiff was officially discharged from the Air Force).

## DISCUSSION

### I. THIS COURT'S JURISDICTION AND THE STANDARDS RE: MOTIONS FOR JUDGMENT ON THE ADMINISTRATIVE RECORD

#### A. *Jurisdiction*

The court has jurisdiction over the subject matter of this case pursuant to the Tucker Act and the applicable statute(s) entitling plaintiff to compensation as a member of the armed forces. While defendant does not question our jurisdiction, we believe it appropriate to quote the Tucker Act herein, which states, in relevant part, as follows:

§ 1491. **Claims against the United States generally**

(a)(1) The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department. . . .

(2) To provide an entire remedy and to complete the relief afforded by the judgment [in paragraph (1) ], the court may, as an incident of and collateral to any such judgment, issue orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records, and such orders may be issued to any appropriate official of the United States. In any case within its jurisdiction, the court shall have the power to remand appropriate matters to any administrative or executive body or official with such direction as it may deem proper and just.

28 U.S.C. § 1491.

The Tucker Act by itself, however, does not fully grant us jurisdiction, but merely sets the parameters of our authority to decide a matter against the United States for money damages if, in addition, a plaintiff can show "a money mandating statute that entitles him to a pay remedy." *Chandler v. United States*, 47 Fed.Cl. 106, 111 (2000), *quoting Palmer v. United States*, 168 F.3d 1310, 1314 (Fed.Cir.1999). In this matter, the money mandating statute that confers jurisdiction on this court, when coupled with the Tucker Act, is 37 U.S.C. § 204, which states in relevant part that: "[t]he following persons are entitled to the basic pay of the pay grade to which assigned . . . a member of a uniformed service [*i.e.*, the Air Force] who is on active duty . . . ." Plaintiff, obviously, falls within the purview of this statute. Therefore, because of the above, it is clear that we have jurisdiction to decide this matter. *Chandler*, 47 Fed.Cl. at 112.

#### B. *Motions for Judgment on the Administrative Record*

Motions for judgment on the administrative record are reviewed according to the same standards as motions for summary judgment. *See* RCFC 56.1(a); *Hoskins v. United States*, 40 Fed.Cl. 259, 270 (1998). Accordingly, judgment on the administrative record is appropriate when there are no genuine issues of material fact *and* the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Considering that there are cross-motions for judgment on the administrative record, each party here must prove that there are no genuine issues of material fact regarding all relevant issues in contention. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Therefore, from our review of the administrative record, the court must decide, notwithstanding the parties' assertions, whether there are genuine issues of material fact regarding each issue. Of course, in evaluat-

ing the opposing party's motion for judgment on the administrative record, the court will draw "all justifiable inferences" in the nonmovant's favor. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. In other words, when we evaluate one party's motion for judgment, we must look at the evidence presented in the light most favorable to the opposing side.

As stated earlier, the Air Force did not hold formal proceedings before deciding to deny plaintiff's claim for back pay. This point, however, does not make the record incomplete. "[A] formal hearing before the agency [Air Force] is in no way necessary to the compilation of an [adequate] agency record" for this court to render a decision. *Florida Power & Light Company v. Lorion,* 470 U.S. 729, 744, 105 S.Ct. 1598, 84 L.Ed.2d 643 (1985). In other words, "if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it," then it would be proper to issue a remand order to the agency for "additional investigation or explanation." *Id.* Such is not the case here. Therefore, we proceed with what we have before us, which we hold is completely adequate to determine the specific issues in dispute regarding this matter, *i.e.,* plaintiff's entitlement to pay during the court-martial process.

Upon review of the facts asserted and agreed upon by the parties, and the administrative record, as supplemented by plaintiff, the court concludes that we are faced with entirely legal issues in this matter. Those material and relevant facts that the parties have not indisputably agreed upon in their filings have been easily discernible by the court from the totality of the record. In other words, we find that there are no material issues of fact in dispute between the parties. Therefore, we will apply the relevant statutes, military regulations, and case law to the record in its entirety, and rule accordingly in the following section.

## II. THE COURT'S DECISION RE: THE PARTIES' CROSS–MOTIONS

█ Initially, "[t]hree general principles of military law" define the parameters of what relief we can order in this case. *Dock v. United States,* 46 F.3d 1083, 1086 (Fed.Cir. 1995). First, and foremost, "the rights and benefits of a member of the military services, including pay and allowances, are defined by statute." *Id.* In other words, we must adhere to the letter of the relevant military pay statutes when we rule on plaintiff's action herein. "Second, by law once a member's pay has accrued it cannot be forfeited by court-martial." *Id.* at 1087; 10 U.S.C. § 857(a) (2001). Finally, "forfeiture of *future* pay can only be imposed by the sentence of a lawful court-martial." *Id., citing Walsh v. United States,* 43 Ct.Cl. 225, 231, 1907 WL 842 (1908) (emphasis added). Accordingly, we rule on the issues presented by this matter within the framework of the above three basic tenets.

Considering the issues presented, the court, after an extensive review of the record in this case along with the relevant statutes and regulations, has divided its discussion into four (4) subsections. Each subsection encompasses relevant time periods with a separate holding contained therein based on what status plaintiff held under the applicable military law during said time periods. In other words, we have divided the opinion into four subsections because plaintiff's status, for pay purposes under the law, can be logically divided into five separate time periods, two of which are identical in circumstance. We note that the entire relevant time period presented by plaintiff in this case, to wit, June 10, 1991 [11] to March 6, 1998 is addressed by the combination of these four subsections which follow.

A. *June 10, 1991 (Date plaintiff's rank officially reduced from E–6 to E–1) to October 8, 1992 (Date plaintiff's sentence was overturned)*

█ As we stated earlier, plaintiff was convicted of murder and other crimes on September 26, 1990, sentenced, and confined on the same date. This confinement continued during the entire time period addressed

---

**11.** Initially, in his complaint, plaintiff began the disputed pay period with May 1, 1991, but has since changed his position to a beginning date of June 10, 1991, to which both parties are in agreement.

by this subsection. Plaintiff's rank, however, was not officially reduced by the convening authority of the Air Force, *supra* note 6, until June 10, 1991. Moreover, both parties have unequivocally stated that there is no dispute between them regarding any pay prior to this date. Accordingly, we begin our analysis at June 10, 1991.

Plaintiff's sentence of September 26, 1990 ("the original sentence") included confinement, dishonorable discharge, a total forfeiture of pay,[12] and reduction in rank to E–1. According to the version of 10 U.S.C. § 857(a) that was in effect at the time of plaintiff's original sentence, his forfeiture of pay began on June 10, 1991, the day the sentence was approved by the convening authority. 10 U.S.C. § 857(a) (1995). ("No forfeiture may extend to any pay or allowances accrued before that date on which the sentence is approved by the person acting [as the convening authority].").[13] As such, the Air Force ceased paying plaintiff at any rate on this date and defendant contends that we should concur with this result.

Plaintiff's reduction in rank to E–1, pursuant to the sentence, also occurred on June 10, 1991. We note, however, that even if the reduction in rank was not specifically part of the original sentence, it would have been automatically effected on June 10, 1991, pursuant to 10 U.S.C. § 858a, which states in relevant part:

> Unless otherwise provided in regulations to be prescribed by the Secretary concerned, a court-martial sentence of an enlisted member in a pay grade above E–1, as approved by the convening authority, that includes—
>
> (1) a dishonorable or bad-conduct discharge; [or]
>
> (2) confinement . . .
>
> reduces that member to pay grade E–1, effective on the date of that approval.

**12.** *See supra* note 1 for definition of 'forfeiture.'

**13.** While not an issue between the parties in this instant matter, 10 U.S.C. § 857 was modified effective March 10, 1996, and it now operates to forfeit convicted servicemembers' pay almost immediately after sentence.

As stated earlier, plaintiff's original sentence was overturned on October 8, 1992, with the murder charge itself remaining intact. After this date, plaintiff was then in a criminally charged, but pre-trial, status because he no longer had a valid and approved sentence. As such, we use October 8, 1992 to mark an endpoint in which plaintiff's status and entitlement to pay changed significantly thereafter. Thus, in sum, this subsection represents the time period June 10, 1991 to October 8, 1992 whereby plaintiff was confined under what was, at the time, a fully valid and approved sentence, only part of which eventually was upheld.[14] In his complaint, plaintiff requests pay at the rate of E–6 for this entire period, *i.e.*, June 10, 1991 to October 8, 1992.

The specific statute that addresses the situation presented in this time period is 10 U.S.C. § 875(a), which states:

> **Restoration**
>
> **(a)** Under such regulations as the President may prescribe, all rights, privileges, and property affected by an executed part of a court-martial sentence which has been set-aside or disapproved, except an executed dismissal or discharge, shall be restored *unless a new trial or rehearing is ordered and such executed part is included in a sentence imposed upon the new trial or rehearing.*

(2001) (emphasis added). This language is unequivocal and, under a plain reading, it shows that plaintiff is not entitled to be restored any pay that was partially forfeited by the second sentence of March 22, 1995, *i.e.*, pay above the E–1 rate. In other words, the portions of the second sentence which were included in the original sentence *relate back* to the date of the original sentence, June 10, 1991. *Id.*

Furthermore, the Court of Appeals for the Federal Circuit has also held that the plain

**14.** As explained earlier, the March 22, 1995 sentence ("the second sentence") included all of the relevant components (to the pay issue) of the original sentence, except for total forfeiture of pay. Partial forfeiture, consisting of all pay above the E–1 rate, however, was effected because the reduction in rank component was included in the second sentence.

language of § 875 is clear and in comport with the above. In *Dock v. United States*, the Federal Circuit held that:

> [I]f a rehearing is ordered, and the member is resentenced, then only that part of the executed first sentence that is *not* included in the second sentence shall be restored to the member.

 \* \* \* \* \* \*

> Congress has decreed in Article 75(a) [§ 875] that a forfeiture of pay ordered in a regularly-constituted court-martial and executed by competent authority, even though the order is found later to be legally defective, can be *related back* by a subsequent court-martial that imposes a sentence in which the executed part is included.

 \* \* \* \* \* \*

> When Congress enacted Article 75(a), it addressed a *singular circumstance*, that of a member of the military service whose conviction and sentence are set aside, and who is re-convicted and re-sentenced for the *same offense*. In that singular circumstance, Congress has decreed that the executed part of the first sentence that is *included in the second sentence* remains in effect.

46 F.3d at 1087–88, 1093 (Fed.Cir.1995) (emphasis added). *See also, Armstrong v. United States*, 121 F.3d 667 (Fed.Cir.1997) (finding that, pursuant to 10 U.S.C. § 875, service member, who was originally sentenced to reduction in rank, entitled only to E–1 pay during the period of time between his first conviction and its overturning, when the subsequent second conviction and sentence also included reduction to E–1).

To reiterate, what was included in plaintiff's second sentence was: a dishonorable discharge; confinement; and *reduction to E–1, i.e.*, partial forfeiture. What is also important to our application of § 875 to the facts here is what was *not* included in the second sentence, that is *total forfeiture* of pay. Accordingly, the total forfeiture portion of the original sentence does not survive the second sentence, and is hereby deemed a nullity. The reduction in rank to E–1, however, was included in the second sentence and, as a consequence, under § 875 we hold that plaintiff was, indeed, entitled to pay at the rate of E–1 only during the period addressed herein. Therefore, plaintiff's argument that he is entitled to the rate of pay at E–6 fails. Congress has clearly spoken on this issue, and, because the only right to pay that plaintiff has is by statute, we rule as such. *See supra* at 599 ("[T]he rights and benefits of a member of the military services are defined by statute.").

Additionally, the relevant military regulations support our ruling here. For example, paragraph 030206(A) of the DOD Financial Management Regulation states:

> *Military Confinement*

> A. *General.* Pay and allowances accrue to a member in military confinement except when:

> ... 2. Pay and allowances are forfeited by court-martial sentence.

Volume 7A (February 2000). As plaintiff's second sentence did not contain a total forfeiture provision, and we have held that such is a nullity *ab initio* as per 10 U.S.C. § 875, plaintiff, while in confinement, was entitled to be paid as an E–1 from June 10, 1991 to October 8, 1992. The above provision, however, does not entitle plaintiff to pay at the E–6 rate, but only at E–1, because reduction in rank *was* included in the second sentence and, thus, the reduction, or *partial* forfeiture, relates back to June 10, 1991.

In sum, we hold that plaintiff is entitled to the *E–1 rate* of pay, including all commensurate benefits, for the entire period of June 10, 1991 to October 8, 1992. The record is unclear regarding how much plaintiff has received as pay and benefits for this period, and, for that matter, we are not calculating actual pay entitlement herein, as we previously explained. Accordingly, such calculations shall be undertaken by the parties on remand.

**B.** *The two time periods during which plaintiff was on 'full duty' status*

■ This subsection covers the two time periods that plaintiff was placed on full duty status by the Air Force, to wit, October 9, 1992 (first day after his sentence was over-

turned) to October 8, 1993 (last day of plaintiff's first period of full duty status) and July 19, 1994 (plaintiff again placed on full duty status) to March 21, 1995 (last day of plaintiff's second period of full duty status or the day before plaintiff's second conviction, sentence, and confinement). *See supra* at 594–95. Despite that, technically, plaintiff was placed on full duty status on October 21, 1992, we are using October 9, 1992 to mark our beginning point for the first period of full duty status, as this was the first day after the Air Force Review Court overturned plaintiff's entire sentence, which resulted in the Air Force placing him on full duty status on October 21, 1992.

Thus, after October 8, 1992, plaintiff did not have an approved sentence, and we find that the brief time lag between the October 8, 1992 overturning and the October 21, 1992 placement on full duty status was likely an administrative delay, which should not be charged against plaintiff's time in full duty status. Also during the first period of full duty status, on August 30, 1993, plaintiff's term of enlistment expired.[15] Regarding the second period addressed herein, July 19, 1994 to March 21, 1995, the record clearly shows that plaintiff was on full duty status for the entire time. As such, for the entirety of these two full duty status periods, plaintiff was neither confined (except for the brief period between October 8 to October 21, 1992), nor convicted under a valid and approved sentence.

Additionally, we note that defendant *concedes* in its pleadings that plaintiff was entitled to pay at the rate of E–1 for both full duty status periods. Def.'s Mot. at 8–9 ("Mr. Combs is only entitled to be paid at the E–1 rate during those periods [he was on full duty status]."). Plaintiff, by his pleadings, however, demands pay at the rate of E–6 for the two periods. For the reasons stated

herein, we reject plaintiff's position, and hold that he is entitled to E–1 pay only for the two full duty status periods.

Both parties agree that plaintiff, during said time periods, was paid at the E–1 rate, was given tasks and assignments commensurate with said rank, and was forbidden to wear the rank of E–6. Plaintiff, however, argues that he *was entitled* to the rank of E–6 during the periods he was on full duty status, not E–1. The Court of Appeals for the Armed Forces (CAAF), apparently, agreed with plaintiff, in its 1997 opinion. *Supra* at 596. Accordingly, plaintiff argues in the instant matter that we are required to follow the CAAF decision pursuant to the 'law of the case doctrine.' *Christianson v. Colt Industries*, 486 U.S. 800, 815–16, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988) ("As most commonly defined, the doctrine of the law of the case posits that when a court decides upon a rule of law, that decision should continue to govern the *same issues* in subsequent stages of the *same case*." (citation omitted) (emphasis added)). As will be explained below, this argument, however, is rejected, and we rule that the CAAF''s decision is of no moment to our instant case.

As stated earlier, *supra* at 596, the CAAF reviewed a portion of the lower decision of the Air Force Appellate Court on the sole issue of plaintiff's allegations that defendant had violated 10 U.S.C. § 813 by unlawfully punishing him during his two periods of full duty status prior to his second conviction of March 22, 1995. *Combs*, 47 M.J. at 330 (1997). Plaintiff had alleged that this unlawful punishment consisted of the Air Force's demoting him in rank from E–6 to E–1, paying him at that rate, and only giving him duties and assignments commensurate with the lower E–1 rank. *Id.* at 332. Initially, the Air Force Appellate Court held, in 1996,

---

15. As discussed *supra* at pp. 594–95, plaintiff was retained by the Air Force after the date his enlistment expired so that he could be tried again on the murder charge. According to paragraph 10317(c) of the DOD Pay Manual, this circumstance does not affect his right to pay for the periods addressed in this subsection. Said paragraph states: "[a]n enlisted member retained in the service for the purpose of trial by court-martial is not entitled to pay for any period after the expiration of the enlistment *unless ... the member is retained in or restored to a full duty status.*" Ch. 3 (1987) (emphasis added); ¶ 030207(C), DOD Financial Management Regulation, Vol. 7A (2000); *see also Dock,* 46 F.3d at 1090 ("Article 75(a) [10 U.S.C. § 875(a)] provides no basis for distinguishing between periods ... before and after the expiration of enlistment.").

that, while plaintiff should have been kept at the rank of E–6, there was no "punitive intent" on the part of the Air Force in reducing his rank, thus there was no violation of § 813. *Combs,* ACM 29305, slip op. at 6 (1996).

This ruling was subsequently overturned in part, as the CAAF held, in its 1997 decision, that not only was plaintiff entitled to be held at the rank of E–6 during his two periods of full duty status, the Air Force violated § 813 by reducing his rank to E–1 for said periods. *Combs,* 47 M.J. at 333 ("We hold that the defense's [Mr. Comb's] affidavit is unrebutted and unequivocally established the punitive intent of command authorities towards this servicemember [in reducing him to E–1 during his two periods of full duty status]."). Accordingly, the CAAF awarded plaintiff credit for a total of 20 months of confinement for the violation. *Id.* at 334. It is important to our decision here that plaintiff only requested confinement credit, not his actual pay, for the § 813 violation, and that the CAAF did not award plaintiff any monetary compensation whatsoever, nor did it render a specific decision on the pay issue in its 1997 judgment.

The CAAF did not address plaintiff's civil claim for back pay for two reasons: 1) he did not ask it to do so; and 2) it declined to exercise jurisdiction over the pay claims. The import of the first reason is obvious, and thus we will go immediately to an analysis of the second reason, jurisdiction. Under 10 U.S.C. § 867(a)-(c), the jurisdiction of the CAAF is strictly limited to both: a) criminal cases from the military courts; and b) "the findings and sentence as approved by the convening authority and as affirmed ... by the [military] Court of Criminal Appeals.... In a case reviewed upon petition of the accused [such as what happened in the instant], that action need be taken only with respect to *issues specified in the grant of review*." (2001) (emphasis added); *see Clinton v. Goldsmith,* 526 U.S. 529, 533–34, 119 S.Ct. 1538, 143 L.Ed.2d 720 (1999) ("When Congress exercised its power to govern and regulate the Armed Forces by establishing the CAAF, it confined the court's jurisdiction to the review of specified sentences imposed by

courts-martial ...." (citations omitted)). Plaintiff had only asked for review pursuant to § 813, and, more importantly, had only asked for *confinement credit, not actual pay.* Thus, considering the above, a ruling on plaintiff's entitlement to pay was just simply not within the *scope* of the CAAF's decision, and we hold that said court did not rule on such.

Moreover, the current dispute over whether the Air Force must actually remit to plaintiff back pay to which he is entitled is now within the jurisdiction of this court only. The U.S. Court of Military Appeals (now known as the CAAF) itself commented on its jurisdiction in this area, or lack thereof, by stating:

> [W]e hesitate ... to interpret military pay regulations under circumstances where there is another court whose *expertise is in that area of the law.* If such review were tied to some provision of the Uniform Code of Military Justice [pursuant to 10 U.S.C. § 867] or to some notion of due process that impacted on military justice [*i.e.,* the U.S. Constitution], we might be disposed otherwise.
>
> This court has broad authority under the All Writs Act, 28 U.S.C. § 1651(a). Regardless of the scope of our jurisdiction under that statute, however, we have discretion to determine whether and when relief is appropriate. Under these circumstances, we conclude that Keys should pursue his claim of *monetary entitlement* in the United States Claims Court [now known as the U.S. Court of Federal Claims], which has *special expertise in this field,* rather than in this Court.

*Keys v. Cole,* 31 M.J. 228, 234 (C.M.A.1990) (citations omitted)(emphasis added). Thus, as plaintiff's request for back pay is now a civil claim—indeed, it is not at all part of plaintiff's prior criminal case anymore under 10 U.S.C. § 867—and the CAAF did not address such a claim in any event, we have sole jurisdiction over it at this point in time. In sum, the decisions by the Air Force Appellate Court and the CAAF ruling that plaintiff *should have* been paid as an E–6 during the relevant period herein are *not* obligatory on us.

As a result of the above, we reject plaintiff's argument that the law of the case doctrine compels us to follow a ruling by the CAAF that was not even made, *i.e.*, an order directing the Air Force to pay plaintiff at the E–6 rate for the two periods he was on full duty status. Furthermore, we note that the 1997 CAAF decision and 1996 Air Force Appellate decision were not even the "same case," as contemplated by *Christianson*, 486 U.S. at 815–16, 108 S.Ct. 2166. Our instant matter here is clearly a "new and independent cause of action" distinct from the prior military court decisions, which were clearly criminal, as opposed to civil. *Id.* at 814, 108 S.Ct. 2166. This point, most certainly, makes it clear that our case is a different matter and, therefore, the law of the case doctrine is inapplicable.

■ Even if our case was part of the same matter as the military decisions above, we still would have the authority to render the decision awarding plaintiff only the rate of E–1 pay as opposed to E–6 pay, if we found that the military decisions were "clearly erroneous." *Id.* at 817, 108 S.Ct. 2166. Given the fact that 10 U.S.C. § 875, as interpreted by the *Dock* court, clearly operates to entitle plaintiff only to E–1 pay, any decision of a prior court awarding him E–6 pay would be clearly erroneous.[16] In other words, while the CAAF may have held that the Air Force's imposition of reduced rank when plaintiff was "trapped in the twilight of the court-martial process," *i.e.*, during the time periods addressed herein, was unlawful pretrial punishment in violation of § 813, § 875 and *Dock* make it clear that, considering plaintiff's subsequent conviction and sentence, the reduction in rank and lower pay rate refer *back to* plaintiff's first conviction. *Combs*, 47 M.J. at 334; 10 U.S.C. § 875(a). As such, plaintiff is only entitled, under the law, to the E–1 rate during the periods he was on full duty status.

We are not holding, however, that the CAAF was, in fact, erroneous, only that plaintiff is entitled to *pay* at the rate of E–1, and no more, during the periods addressed herein. By example, consider that at least one court has held that a totally *lawful action* on the part of the Air Force could still be deemed a violation of § 813, if it was motivated by a "punitive intent." *United States v. Washington*, 42 M.J. 547, 562 (A.F.Ct.Crim.App.1995) ("However, an otherwise lawful action still violates Article 13 [10 U.S.C. § 813], if it is intended as punishment or does not reasonably relate to a legitimate nonpunitive governmental objective."). The CAAF's decision merely stated that plaintiff should have been held at the rank of E–6 during the relevant periods, and gave him confinement credit for the denial of such, without actually ordering the Air Force to pay him the difference between E–1 and E–6. *Combs*, 47 M.J. at 334. Thus, actual *pay* was not awarded. As a consequence, we see the part of the CAAF opinion that says plaintiff *should have* been paid at the E–6 rate as dicta to its holding that the Air Force violated 10 U.S.C. § 813. Accordingly, we rule as above with no comment, nor criticism, of the CAAF's 1997 holding that the Air Force violated § 813 by reducing plaintiff in rank to E–1, an issue we do not address herein.

Furthermore, plaintiff argues that defendant already had the opportunity, during the litigation before the CAAF in 1997, to raise the issue of § 875's retroactive application of the reduction in grade to the full duty status periods, and, because it did not do so, any argument postulating such in this court has, thus, been waived. We reject this position. First, as we stated above, the instant case is a civil matter, which is wholly separate and distinct from plaintiff's criminal case addressed by the military courts discussed above. Second, the *Dock* court clearly stated that: "[s]ince the parties have properly raised the question of the applicability of Article 75(a) [10 U.S.C. § 875(a) ] to this case, and we find it importantly applicable, we conclude that [we will look at it in the instant case]...." 46 F.3d at 1090. Therefore, we rule that there is absolutely no reason for the court to turn a blind eye to the

---

16. See, *supra*, discussion in subsection A of this opinion, holding that § 875 clearly entitles plaintiff only to E–1 pay because a reduction in rank was included in his second sentence of March 22, 1995, which relates back to the first approved sentence of June 10, 1991.

statute promulgated by Congress which specifically addresses the relevant *pay* entitlement issues of this matter.

As a corollary to the above, if we accepted plaintiff's ungrounded position that defendant has already litigated, or in better words, failed to litigate the § 875 issue, we would also be compelled to conclude that plaintiff, himself, already litigated the actual pay issue, as well. Thus, having received *confinement credit* already for the Air Force's violation of § 813, we would hold that plaintiff should not also be given a 'second bite at the apple' in this court to request monetary relief for a violation by the Air Force for which he has already received compensation, *i.e.,* confinement credit. Simple logic and the basic tenets of jurisprudence would necessitate that we rule as such in that circumstance.

Similarly, we also reject plaintiff's argument under *Goldman v. Weinberger* that we are required to "give great deference to decisions made by military tribunals," and thus must award plaintiff the E–6 rate for the relevant periods based on the CAAF opinion. Pl.'s Cross–Mot. at 15; 475 U.S. 503, 507, 106 S.Ct. 1310, 89 L.Ed.2d 478 (1986) ("[C]ourts must give great deference to the professional judgment of military authorities concerning the relative importance of a particular military interest."). The instant case, as we have stated, is totally separate and distinct from the prior military tribunals' decisions discussed above, and our ruling, in the civil context, on plaintiff's entitlement to pay for the periods discussed herein neither affects, nor is affected by, those decisions. Accordingly, the *Goldman* tenet of deference to the military is inapposite to the *pay* issues being addressed herein.

Finally, we reject plaintiff's argument that he should be entitled to the E–6 rate based on two (2) Air Force forms, which indicate that he was in the rank of E–6 during the relevant time periods addressed herein. Both forms are titled 'Duty Status Change,' and are dated October 27, 1992 and July 19, 1994, respectively. Admin. Rec. at 17, 26. Under the title "Grade," the October 1992 form indicates plaintiff as holding the rank of "Tsgt" (also known as an E–6) and states: "all rights and privileges are restored. . . .

Tsgt Combs is administratively assigned to the 3320 CRS pending further disposition of his case." Admin. Rec. at 17. The July 1994 form simply indicates plaintiff at the rank of "E–6" and states: "member is restored to full pay and allowances eff 19 Jul 94 . . . ." Admin. Rec. at 26. These forms, on their face, would appear to grant plaintiff the pay rate at E–6 during the relevant periods, and plaintiff contends that they do so.

We can dispose of this argument, however, quite easily. As we stated earlier, one of the basic tenets of military law is that "the rights and benefits of a member of the military services, including pay and allowances, are defined by statute." *Dock,* 46 F.3d at 1086, *citing Bell v. United States,* 366 U.S. 393, 401, 81 S.Ct. 1230, 6 L.Ed.2d 365 (1961) ("A soldier's entitlement to pay is dependant upon statutory right."). Accordingly, plaintiff's only right to pay is what Congress has given him, and in this case, Congress clearly has said, with 10 U.S.C. § 875(a), that plaintiff is entitled to the E–1 rate only, *supra.* That the Air Force forms above state otherwise is of no moment to our decision. *Office of Personnel Management v. Richmond,* 496 U.S. 414, 432, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990) ("[F]unds may be paid out [of the Treasury] only on the basis of a judgment based on a substantive right to compensation based on the *express* terms of a *specific* statute. . . . Here, the relevant statute by its terms excludes respondent's claim, and his remedy must lie with Congress." (emphasis added)). Consequently, we reject plaintiff's position outright that the Air Force forms, cited above, entitle him to the E–6 rate of pay for the periods addressed in this subsection.

To summarize, we hold that plaintiff is entitled to all of the pay and benefits of the rank, and at the rate, of E–1 for the following periods: 1) October 9, 1992 to October 8, 1993; and 2) July 19, 1994 to March 21, 1995, representing the totality of the time frames that the Air Force had placed him on full duty status.

**C.** *October 9, 1993 to July 18, 1994 (Appellate Leave Period)*

■ This subsection discusses the singular time period during which plaintiff was placed

on 'excess leave' or what is more commonly known as 'appellate leave.' Under the relevant statute and military regulation discussed below, appellate leave is a status a servicemember can be placed on by the military while such person is awaiting the full disposition of a court-martial. Plaintiff alleges that he was entitled to be paid at the E–6 rate for the entire period he was on appellate leave. Defendant, on the other hand, contends that the law is clear in that plaintiff is not entitled to *any* pay for this period. As we explain below, we agree with defendant's position.

Despite denying plaintiff's initial request to be placed on appellate leave, by letter dated August 9, 1993, the Air Force, in fact, did place him in such status, beginning on October 9, 1993. Pl's Reply at App.; Admin. Rec. at 19. On June 15, 1994, the U.S. Court of Military Appeals (now the CAAF) completed its review of plaintiff's first murder conviction and sentence, and affirmed the Air Force Review Court's October 8, 1992 overturning of each. *Supra* at 595. Likely a direct result of the June 15, 1994 decision, the Air Force decided to remove plaintiff from appellate leave and place him on his second period of full duty status, beginning on July 19, 1994. Accordingly, the time frame addressed by this subsection is from October 9, 1993 to July 18, 1994, representing the entirety of the period plaintiff was on appellate leave. We note that, during this period, plaintiff was not confined, and, as far as the record shows, was not paid at all by the Air Force.

Appellate leave, or excess leave, is statutorily implemented pursuant to 10 U.S.C. §§ 876(a), 706, and 707, which, in relevant part, state:

§ 876a. Art. 76a. **Leave required to be taken pending review of certain court-martial convictions**

... [An] accused who has been sentenced by a court-martial *may be required* to take leave pending completion of action under this subchapter ....

§ 706. **Administration of leave required to be taken pending review of certain court martial convictions**

... (b)(2) Except as provided in paragraph (1)[17] and in section 707 of this title, *a member may not accrue or receive pay or allowances* during a period of leave required to be taken under section 876a of this title.

§ 707. **Payment upon disapproval of certain court-martial sentences for excess leave required to be taken**

(a) A member—

(1) who is required to take leave under section 876a of this title, any period of which is charged as excess leave under section 706(a) of this title; and

(2) whose sentence by court-martial to a dismissal or a dishonorable discharge or bad-conduct discharge is set aside or disapproved by a Court of Criminal Appeals under section 866 of this title or by the United States Court of Appeals for the Armed Forces under section 867 of this title, shall be paid, as provided in subsection (b), for the period of leave charged as excess leave, *unless a rehearing or new trial is ordered and a dismissal or dishonorable or bad-conduct discharge is included in the result of the rehearing or new trial* and such dismissal or discharge is later executed.

(2001) (emphasis added).

The statute above clearly shows that a servicemember similarly situated as plaintiff is not entitled to pay during any period that he or she is on appellate leave. *Id.* For example, § 876a's clause "may be required" shows that the Air Force had discretion, during the pendency of plaintiff's court-martial, to place him on appellate leave. *Id.* Next, § 706(b)(2)'s clause stating that: "[e]xcept as provided in ... section 707 of this title, a member may not accrue *or receive pay or allowances* during a period of leave required to be taken under section 876a of

---

17. Paragraph (1) of 10 U.S.C. § 706(b) relates solely to *accrued* leave (vacation time in the vernacular) earned by a servicemember prior to being placed on appellate leave. Plaintiff would certainly be entitled to any accrued leave he had earned prior to October 9, 1993, *see supra* at 599 ("once a member's pay has accrued it cannot be forfeited by court-martial"), but he has not raised any issue whatsoever regarding unpaid accrued leave. As such, § 706(b)(1) is irrelevant.

this title," indicates that plaintiff was *not* entitled to pay during the period he was placed on appellate leave, *unless* he was covered under the exception expressed in § 707(a). *Id.* (emphasis added).

Finally, § 707(a) states that a plaintiff, whose court-martial sentence was "set-aside," would be entitled to be paid for the period of appellate leave, *"unless* a rehearing or new trial is ordered and a dismissal or dishonorable or bad-conduct discharge is included in the result of the rehearing or new trial and such dismissal or discharge is later executed." *Id.* (emphasis added). This clause clearly addresses plaintiff's specific situation, to wit, his original sentence was set aside, he was placed on appellate leave, and he was then re-convicted and sentenced to a dishonorable discharge. Considering the above, we hold that the statute cited above compels us to deny plaintiff pay for the appellate leave period. *See Johnson v. United States,* 41 Fed.Cl. 190, 192 (1998) ("A service member on appellate leave is entitled to military benefits such as health care . . . but not military pay and allowances.").

Plaintiff argues that "[t]his statute [referring to § 706(b)(2) ] DOES NOT address the special situation of what happens when the sentence is set aside on appellate review. . . ." Pl's Cross–Mot. at 17. In fact, § 707(a) *does* address the specific circumstances of plaintiff's court-martial, to wit, his original sentence was set aside on appellate review, he was re-tried, then re-convicted and sentenced to a dishonorable discharge. From a plain reading of both §§ 706 and 707, it is obvious that each references the other, they are both interrelated, and, as demonstrated above, in concert specifically address exactly what happened in plaintiff's situation. Consequently, we outright reject plaintiff's argument above.

The relevant military regulations also support our ruling herein. Paragraph 10307(b) of the DOD Pay Manual reiterates § 707 above, almost verbatim, and states:

A member required to take leave under Article 76a [10 U.S.C. § 876a], UCMJ, whose sentence by court-martial to dismissal or dishonorable or bad-conduct discharge is set aside or disapproved on appellate review, shall accrue pay and allowances for the period of leave charged as excess leave [appellate leave] . . . *unless a rehearing or new trial is ordered and dismissal or dishonorable or bad-conduct discharge results from the rehearing or new trial and such dismissal or discharge is later executed.*

Ch. 3 (1987) (emphasis added). Considering that plaintiff has not cited any authority to the contrary, we must hold that he is *not* entitled to pay during the period of time addressed herein.

What plaintiff *has* cited is a December 16, 1999 letter from Don Burnes of the DFAS, *supra* at 597, which states that "you [plaintiff] are due pay and allowances for the period of time you were on appellate leave." Supp. Admin. Rec. at 15–16. Notwithstanding the fact that the above statement is vague in its communication of what exactly plaintiff is entitled to, the letter does not in any way require us to hold for plaintiff in contravention to the express terms of the statute and regulation cited above. We view plaintiff's position as an argument for estoppel against the government, *i.e.,* the Air Force should be estopped from contradicting the statements of its officials. As such, said position raises a constitutional issue in the instant context.

We cited a Supreme Court case earlier in this opinion that stated: "funds may be paid out [of the Treasury] only on the basis of a judgment based on a substantive right to compensation based on the *express* terms of a *specific* statute . . . ." *Richmond,* 496 U.S. at 432, 110 S.Ct. 2465 (action by retired Navy personnel to recover disability benefits) (emphasis added); *supra* at 605. In this same case, the Supreme Court went on further to say that: "[i]f agents of the Executive were able, by their unauthorized oral or written statements to citizens [or servicemembers], to obligate the Treasury for the payment of funds, the control over public funds that the [Appropriations] Clause [of the U.S. Constitution] reposes in Congress in effect could be transferred to the Executive." *Id.* at 428, 110 S.Ct. 2465. Thus, "[w]e would be most hesitant to create a judicial doctrine of estoppel that would nullify a congressional deci-

sion against authorization of the same class of claims." *Id.* at 430, 110 S.Ct. 2465; *see also, Dock,* 46 F.3d at 1089 ("It is axiomatic that government agents cannot bind the Federal Government to pay public funds in violation of positive law."). Accordingly, plaintiff's position that Mr. Burnes' letter, by estoppel, entitles plaintiff to pay during his period of appellate leave is hereby rejected.

Additionally, plaintiff's argument that he "was never validly placed on appellate leave" is equally erroneous. Pl.'s Reply at 5. As sole support for this argument, plaintiff points out that the Air Force initially denied his request to be placed on such leave, by letter dated August 9, 1993. Plaintiff, however, *was* placed on appellate leave, and the administrative record shows this on two (2) Duty Status Change forms, which indicate that he was on appellate leave during the relevant period addressed in this subsection. Admin. Rec. 19, 26. Accordingly, we reject this final ungrounded argument. In sum, we hold that plaintiff is not entitled to any pay or allowances for the entirety of the period he was placed on appellate leave by the Air Force, which was October 9, 1993 to July 18, 1994.

**D.** *March 22, 1995 (Date of plaintiff's second conviction, sentence, and confinement) to March 6, 1998 (Date of plaintiff's official discharge from the Air Force)*

 In this final subsection, we address the period of time beginning with plaintiff's second conviction for murder, and sentence thereon, which was March 22, 1995.[18] Also on the same date, plaintiff was confined to serve out his 21–year sentence. In addition, as part of his sentence, plaintiff was adjudged a reduction in rank to E–1 and a

dishonorable discharge. This sentence was approved by the convening authority on August 10, 1995.

Plaintiff, however, was not officially discharged from the Air Force until March 6, 1998, and we can only surmise that the nearly three (3) year delay was due to the Air Force's desire to see finality in the conviction—*i.e.,* the passing of all possibilities of appeal—before it discharged plaintiff.[19] We further note that during the entire period addressed by this subsection, plaintiff was outside of his term of enlistment, which had expired on August 30, 1993. Accordingly, in this final subsection, we address the time frame of March 22, 1995 to March 3, 1998.

As we have done throughout this opinion, we look to the relevant statutes and military regulations, which are determinative of the entitlement issue. *Supra* at 599. The statute that is relevant to this discussion is 37 U.S.C. § 804, which states in full:

**§ 804. Enlisted members of the Army or Air Force: pay and allowances not to accrue during suspended sentences of dishonorable discharge**

*Pay and allowances do not accrue* to an enlisted member of the Army or the Air Force who is in *confinement* under sentence of dishonorable discharge, *while the execution of the sentence to discharge is suspended.*

(1962) (§ 804, repealed eff. Feb. 10, 1996, Pub.L. 104–106, Div. A, Title XI § 1122(c), 110 Stat. 463) (emphasis added).

While § 804 was repealed effective February 1996, we must apply it to this case because it was in effect at the time of plaintiff's sentence, which was March 22, 1995. 1 U.S.C. § 109.[20] Thus, we find it wholly inap-

---

**18.** Originally in his October 29, 1999 complaint, plaintiff did not ask for pay after this date, but subsequently, in his June 27, 2000 motion for judgment, did do so (at the E–1 rate for the majority of the period). Defendant, without raising the issue that pay after March 22, 1995 was not included as part of plaintiff's original complaint, replied with its own position on the merits. In addition, we note that the issues raised in this subsection are within the overall purview of the facts as laid out in plaintiff's complaint. Considering the above, we view defendant as having *waived* any procedural objection to our

addressing plaintiff's entitlement to pay for the period after March 22, 1995.

**19.** Indeed, the record bears this point out as the CAAF did not complete its final review of plaintiff's criminal case until September 30, 1997.

**20.** 1 U.S.C. § 109 states: "[t]he repeal of *any* statute shall not have the effect to release or extinguish any penalty, *forfeiture,* or liability incurred under such statute … and such statute shall be treated as still remaining in force for the

propriate, as plaintiff would have us rule, to ignore a statute that was clearly and specifically applicable to him at the time of his sentence. Accordingly, we hold that the plain language of § 804 indicates that plaintiff is not entitled to any pay after the date of his sentence and confinement, even though he was not formally discharged from the Air Force until March 6, 1998. *See Armstrong,* 121 F.3d at 668 (holding that plaintiff not entitled to pay from the date of his reconviction by court-martial to the date of his formal discharge).

In addition, the military regulations support our ruling herein. The relevant paragraphs, cited by both parties, state as follows:

¶ 030206 **Military Confinement**

**A.** *General*—Pay and allowances accrue to a member in military confinement *except when:*

1. Confined by military authorities, for civil authorities. . . .

2. Pay and allowances are forfeited by court-martial sentence. . . .

3. *The term of enlistment expires.* See paragraph 030207, below.

¶ 030207 **Term of Enlistment Expires**

\* \* \* \* \* \*

**C. Enlistment Expires Before Trial—** An enlisted member retained in the Military Service for the purpose of trial by court-martial *is not entitled to pay for any period after expiration of the enlistment unless acquitted or the charges dismissed, or the member is retained or restored to a full-duty status.* . . .

\* \* \* \* \* \*

**J. Appellate Review of Court–Martial Sentence—**A *confined* member who is pending appellate review of his or her court-martial sentence is *not entitled to pay and allowances after expiration of term of enlistment, unless the conviction is completely overturned or set aside.*

DOD Financial Management Regulation, Vol. 7A, ¶¶ 030206, 030207(C), (J) (emphasis added). We analyze the applicability of these paragraphs as follows.

Obviously, number (1) of paragraph 030206 does not apply to plaintiff because plaintiff was tried for his crimes *by* the military authorities. Similarly, number (2) does not apply, because plaintiff's second court-martial sentence did not include total forfeiture, only partial forfeiture (reduction in rank). *Id.; supra* at 595–96 & n. 5. Number (3), however, does apply to plaintiff because his term of enlistment expired on August 30, 1993, prior to his second sentence and confinement, which occurred on March 22, 1995. *Id.* Thus, number (3) of paragraph 030206 refers us to paragraph 030207. *Id.*

Subparagraph 030207(C) states that a servicemember whose term of enlistment expired but who is held by the military for court-martial, *i.e.,* plaintiff, is *not* entitled to pay unless he is either acquitted or returned to full duty status. *Id.* Obviously, the first exception in subparagraph 030207(C), acquittal, does not apply. Plaintiff, however, argues that the second exception in subparagraph 030207(C), specifically the clause "unless . . . restored to a full-duty status," applies and means that he is entitled to pay after his second conviction of March 22, 1995, because at two times prior, the Air Force *had* placed him on full duty status. He posits that we must look at ¶ 030207(C) literally, and out of context, in applying it to his circumstances. We hold that plaintiff's interpretation of the above is tortured, at best.

First, if the clause "unless . . . restored to a full duty status" is read within the context of the entire sentence, it is obvious that it means pay would be remitted to servicemembers for periods of full duty status *only.* *Id.* Thus, a logical interpretation of this clause

purpose of sustaining any . . . such penalty, *forfeiture,* or liability." (2001) (emphasis added). *See Bradley v. United States,* 410 U.S. 605, 93 S.Ct. 1151, 35 L.Ed.2d 528 (1973) (narcotic offenses committed prior to effective date of the relevant act were to be punished according to law in force at time of the offenses); *see, cf.,*

*United States v. Gorski,* 47 M.J. 370 (C.A.A.F. 1997) (holding that application of the amended version of § 857(a) to persons tried before the effective date of the amendment, March 10, 1996, to be a violation of the U.S. Constitution's Ex Post Facto Clause).

would result in servicemembers being paid for their time in full duty status while awaiting trial, even if their term of enlistment had already expired. Plaintiff's illogical interpretation would have us awarding pay to servicemembers, who were confined, which of course is not full duty status, simply because at some prior point in their court-martial proceeding they *had been* on full duty status. We will not do that; the above clause was obviously intended to apply to periods a servicemember was actually on full duty status, and plaintiff was never on full duty status during the period addressed herein. Notwithstanding the logic of our decision here, the apparent equities involved militate against paying a servicemember for time he is in prison for a *murder* conviction that is upheld, simply because of a justifiable administrative delay by the Air Force in discharging him.[21]

Secondly, plaintiff's interpretation is completely at odds with subparagraph 030207(J), which operates to divest servicemembers of pay, who are outside of their term of enlistment, while they are awaiting appellate review and *not* serving on full duty status, *i.e.,* while confined. *Id.* Allowing pay for such a class of servicemembers would be contradictory to the plain language of this subparagraph. *Id.* Our interpretation above, to wit, that the exception applies only to those actually on full duty status for the pay period requested, harmonizes subparagraphs (C) and (J).

Finally, plaintiff's interpretation contradicts the plain language of the provisions of § 804, discussed above. We would be most hesitant to interpret a military regulation in such a way as to nullify a statute promulgated by Congress with a plain meaning. *United States v. Larionoff,* 431 U.S. 864, 873, 97 S.Ct. 2150, 53 L.Ed.2d 48 (1977) ("For regulations, in order to be valid must be consistent with the statute under which they are promulgated."). Consequently, we will not do so. The logical interpretation of the foregoing statute and regulations can be simply stated as follows: A servicemember, whose

(a) term of enlistment has expired but is retained in the military for purposes of court-martial; who is (b) confined under a sentence of dishonorable discharge, which means that the servicemember is (c) not on full duty status; is (d) not entitled to any pay; unless (e) the conviction/sentence is set aside or vacated. As plaintiff's second court-martial conviction for murdering his son was approved by the convening authority, reviewed and upheld by two (2) appellate courts, *supra* at 595–96, he is not entitled to any pay for the period March 22, 1995 to March 6, 1998.

## CONCLUSION

The court hereby rules on the parties' cross-motions for judgment on the administrative record, regarding the relevant time periods thereto, as follows:

A) June 10, 1991 to October 8, 1992: plaintiff is entitled to the pay and benefits at the grade level of E–1;

B) October 9, 1992 to October 8, 1993: plaintiff is entitled to the pay and benefits at the grade level of E–1;

C) July 19, 1994 to March 21, 1995: plaintiff is entitled to the pay and benefits at the grade level of E–1;

D) October 9, 1993 to July 18, 1994: plaintiff is not entitled to *any* pay; and

E) March 22, 1995 to March 6, 1998: plaintiff is not entitled to *any* pay.

Given all of the foregoing, this matter is hereby remanded pursuant to RCFC 60.1(b)(1) to the "appropriate ... executive body," to wit, the Air Force, for computation of pay and allowances due plaintiff in accordance with this opinion. Specifically, the Air Force is ordered to determine the dollar amount of Mr. Combs' entitlement in light of our decision and shall file said information with this court, with copies thereof to the parties, within sixty (60) days of the date of this opinion, *i.e.,* on or before January 7, 2002. Finally, upon receipt of said determi-

---

**21.** We further note that the record does not indicate, nor does plaintiff argue, that he was ever prejudiced, or had ever suffered any liability whatsoever, because he was administratively retained in the military until March 6, 1998 while in confinement.

nation, and absent any objections by the parties within fifteen (15) days thereof, the Clerk shall forthwith enter judgment accordingly.

Plaintiff's request for attorneys' fees and expenses under the Equal Access to Justice Act will be addressed by the court, pursuant to 28 U.S.C. § 2412(d)(1)(A)-(B), at the appropriate time and by proper application only. No costs.